THARPE, tax-collector, *et al. v.* CENTRAL GEORGIA COUNCIL OF BOY SCOUTS OF AMERICA.

No. 12158. MARCH 9, 1938.

*Louis L. Brown* and *Louis L. Brown Jr.,* for plaintiffs in error. *Martin, Martin & Snow,* contra.

BELL, Justice. The Central Georgia Council of the Boy Scouts of America, a corporation, brought an action against the tax-collector and sheriff of Peach County, to enjoin a sale for taxes of real estate belonging to the plaintiff, and for cancellation of tax executions, on the ground that the property is exempt from taxation under the Code, § 92-201. The material portion of the Code provision is as follows: "The following described property shall be exempt from taxation, to wit: . . all institutions of purely public charity; all buildings erected for and used as a college, incorporated academy or other seminary of learning . . : provided, . . the above-described property so exempted is not used for purposes of private or corporate profit or income." A general demurrer to the petition was overruled, and the defendants ex-

cepted pendente lite. The case was tried on an agreed statement of facts, upon which the court directed a verdict in favor of the plaintiff. The defendants' motion for new trial was overruled, and they excepted. The bill of exceptions assigns error upon the overruling of the demurrer, the direction of the verdict, and the overruling of the motion for a new trial.

The facts shown in the agreed statement were substantially as follows: The plaintiff is a corporation, having obtained its charter from the superior court of Bibb County in 1928. The charter includes the following provisions: "The corporation shall have no capital stock, its object and purpose being solely of a benevolent character, and not for individual pecuniary gain or profits to its members. The object of the corporation is to assist in carrying out the purpose of the Boy Scouts of America, as declared in the charter granted by Congress to that corporation, to promote, through organization, and co-operation with other agencies, the ability of boys to do things for themselves and others, to train them in Scout-craft, and to teach them patriotism, courage, self-reliance, and kindred virtues, using the methods which are now in common use by Boy Scouts. The purpose of this corporation is to promote the Boy Scout program for character development, citizenship training, physical fitness, and Americanization within the territory designated for its activities by the National Council of the Boy Scouts of America, and in accordance with the constitution and by-laws of the National Council and the policies and regulations thereof, as set forth in its official publications; and further, to share with the National Council responsibility for furnishing adequate leadership, maintaining standards of the Boy Scout Movement, protecting its badges and official insignia against use by those not duly registered as Scouts and Scout officials, and in extending the benefits of the movement to all the boys in America." Twenty-eight counties in central Georgia are assigned to the plaintiff corporation for the development and training of Boy Scouts. As soon as a boy reaches the age of twelve years he is eligible for membership in the Scout organization. The membership in the plaintiff's district now numbers more than one thousand boys, and efforts are being made to increase the enrollment. The plaintiff owns approximately 400 acres of land in Peach County, on which is located an artificial lake covering about seventy-five acres. The

buildings on the property consist of a mess-hall or assembly-room, a workshop, about fifteen small cabins, and a caretaker's house. An annual summer camp is maintained for Boy Scouts on this property, during which time four or five hundred boys attend. The only expense charged against the boys coming to the camp at this time is a sufficient amount to pay for their food, all other expenses being borne by the plaintiff. During the balance of the year the camp is open at all times to the boys, but when they use the camp during such time they carry their food with them. The Scout oath is as follows: "On my honor I will do my best to do my duty to God and to my country, and to obey the Scout law; to help other people at all times; to keep myself physically strong, mentally awake, and morally straight." Under the Scout law the boys are taught that a Scout is trustworthy, loyal, helpful, friendly, courteous, kind, obedient, cheerful, thrifty, brave, clean, and reverent. Special courses are taught at the summer camp, in order to instill in the boys the Boy Scout principles as embodied in the Scout oath and law. A few of the courses taught are archery, bird study, botany, camping, civics, conservation, first-aid, forestry, life-saving, personal health, public health, surveying, swimming, and zoology. Instructors are provided for the teaching of these subjects without cost to the boys. Frequently Boy Scouts are unable to find sufficient money to defray the expense of attending summer camp, and in such cases the plaintiff obtains funds by solicitation and undertakes to see that every worthy boy is given an opportunity to attend camp and study the various subjects.

The sheriff has levied on twenty-five acres of the land, to satisfy a tax execution issued by the tax-collector for ad valorem taxes against the property for the year 1931, and executions for other years have been turned over to the sheriff for collection. The petition described the property, alleged the facts touching its use, and claimed that under the facts alleged it was exempt from taxation. The plaintiffs in error have treated the case as embracing the question whether the property is exempt under the statute relating to "institutions of purely public charity" (Code, § 92-201), and contend only that under the facts shown there is no exemption on this ground; while in the brief filed for the defendant in error the only question argued is whether the property is exempt

as "buildings erected for and used as a college, incorporated academy, or other seminary of learning." In other words, so far as the briefs are concerned, neither side combats the contentions of the other; and therefore this court is in the awkward position of having to decide the case without any friction of minds between counsel, no matter on what ground we may base our conclusion. In the circumstances we shall endeavor to follow the safest course. In the view which we take of the case, we may assume with the plaintiffs in error that the record does embrace the question whether the property is exempt as a charitable institution under the law. Since the statute contains fewer qualifying words and phrases in regard to such an institution than in reference to property used for educational purposes, exemption on the ground of charity appears to be the less doubtful of the two questions mentioned. Accordingly, in pursuance of the policy just indicated, we have examined both questions, but having concluded that the property is exempt as a charitable institution, and being less certain that it is exempt upon the ground relating to education, although perhaps it may be exempt for that reason also, we will discuss only the question as to charity, laying aside the other question.

Under the statute, "the following described property shall be exempt from taxation, to wit: . . all institutions of purely public charity." Code, § 92-201. The test is whether the property itself is "dedicated to charity and used exclusively" as an institution of purely public charity, not whether the plaintiff is an organization of purely public charity. "The exemption from taxation of institutions of public charity, provided for by the constitution, is of such institutions as property not as persons,—the physical things, not the ideal institutions." *Trustees of the Academy of Richmond County* v. *Bohler,* 80 *Ga.* 159 (7 S. E. 633). The character of the plaintiff corporation, as disclosed by its charter provisions and the other evidence, will be considered, of course, in determining whether the use of the property is such as to exempt it from taxation. Cf. *Elder* v. *Atlanta-Southern Dental College,* 183 *Ga.* 634 (189 S. E. 254). A familiar meaning of the word "charity" is almsgiving, but as used in the law it may include "substantially any scheme or effort to better the condition of society or any considerable part of it." Wilson *v.* Independence First

National Bank, 164 Iowa, 402, 412 (145 N. W. 948, Ann. Cas. 1916D, 481). "'Charity,' as used in tax exemption statutes, is not restricted to the relief of the sick or indigent, but extends to other forms of philanthropy or public beneficence, such as practical enterprises for the good of humanity, operated at moderate cost to the beneficiaries, or enterprises operated for the general improvement and happiness of mankind." 61 C. J. 455, § 505. This court has said: "The property of a Young Men's Christian Association, used solely for purposes of public charity, *using the term 'charity' in its broad sense,* is not taxable, provided its income is not used, nor intended to be used, as dividends or profits." (Italics ours.) *City of Waycross* v. *Waycross Savings & Trust Co.,* 146 *Ga.* 68 (4) (90 S. E. 382). The plaintiff derives no income from the property sought to be taxed, and therefore it is necessary to determine only whether the property is used solely for purposes of public charity, "using the term 'charity' in its broad sense." It appears that the plaintiff uses the property as a camp or recreation center, open to all of the Boy Scouts in 28 counties in central Georgia. The boys are allowed to use the camp without charge, except that during the annual summer convention they are required to pay for their food. The plaintiff bears all other expenses. During the summer encampment, special courses are provided through instructors furnished by the plaintiff, for the purpose of instilling in the boys the principles of the Scout organization.

As shown above, the purpose of the organization is the physical, mental, and moral development of boys who have reached a stated age. No one can deny that such an institution is a benefit to society, and that it improves and promotes the happiness of man. In our opinion, the word "charity," as used in the statute, and in the provision of the constitution authorizing its enactment (Code, § 2-5002), is broad enough to include the use which, according to the record, the plaintiff makes of the property here involved. We have been able to find only two cases dealing with the question whether property used by the Boy Scout organization may be treated as a charitable institution, within the meaning of exempting statutes. In both cases its charitable nature was recognized. In Camden County Council Boy Scouts of America *v.* Bucks County, 13 Pa. Dist. & Co. R. 213, it appeared that the use of the property was substantially identical with that shown in the

instant case. While the main question for decision was whether the property of the plaintiff, a New Jersey corporation, should be denied exemption as an "institution of purely public charity" because it was a non-resident corporation, the other question was involved, and in regard to it the court said: "It is not seriously disputed that the petitioner is an institution of purely public charity, within the meaning of section 1, article ix, of the constitution of Pennsylvania, and the act of April 29, 1874, P. L. 73, and the supplements thereto, as interpreted by the superior court in Lancaster County v. Y. W. C. A. of Lancaster, 92 Pa. Superior Ct. 514, and cases therein cited." In Charter Oak Council Inc. Boy Scouts of America v. New Hartford, 121 Conn. 466 (185 Atl. 575), the case turned on a different point, but in the course of the opinion the court said: "The conclusions that the plaintiff corporation is organized exclusively for educational and charitable purposes, and that the real property in question is used exclusively for carrying out those purposes, are amply supported by the finding, which is not susceptible of material correction. They are not invalidated or impaired by any of the facts found concerning the activities and operation of the camp, including the payment, by each Boy Scout attending, of a regular charge toward the expenses, the operation of a camp store, open about twenty minutes a day, the small profits from which go into the camp fund, and the payment, when income permits, of bonuses, in addition to their salaries, to certain officials and employees, for services performed in operating the camp. Connecticut Junior Republic Association Inc. v. Litchfield, 119 Conn. 106, at page 108, 174 A. 304, at page 306, 95 A. L. R. 56, and cases cited; Tillinghast v. Council at Narragansett Pier, 47 R. I. 406, 133 A. 662, 46 A. L. R. 823; Camden County Council, B. S. of A. v. Bucks County, 13 Pa. Dist. & Co. R. 213."

Under the Georgia decisions, the fact that the boys are charged a sum sufficient only to pay for their food would not destroy the charitable nature of the institution nor prevent its exemption. *Brewer* v. *American Missionary Association,* 124 *Ga.* 490 (52 S. E. 804); *Hurlbutt Farm* v. *Medders,* 157 *Ga.* 258 (121 S. E. 321). The plaintiffs in error contend that if this be a charity it is a private charity, and not a "purely public" charity, because the camp is open only to boys who are members of the Scout organi-

zation. We can not agree to this contention. According to the record, every boy on reaching the age of twelve years is eligible to become a member, with no other qualification or restriction. The organization is thus open to all boys alike, within the classification as to age, and all under the age of twelve will in time become eligible, if they live. In *Trustees of the Academy of Richmond County* v. *Bohler,* supra, it was held in effect that charitable institutions are *public,* if they are open "to the whole public, or to the whole of the classes for whose relief they are intended or adapted." See also *Brewer* v. *American Missionary Association,* supra. It follows from what has been said that the court did not err in overruling the demurrer to the petition, or in refusing a new trial. *Judgment affirmed. All the Justices concur.*