20847. UNITED HOSPITALS SERVICE ASSOCIATION
*v.* FULTON COUNTY *et al.*

ARGUED APRIL 12, 1960—DECIDED MAY 5, 1960.

*Buchanan, Edenfield & Sizemore,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, Harold Sheats, J. C. Murphey,* contra.

DUCKWORTH, Chief Justice. *"All institutions of purely public charity"* may be exempt by law from taxation. Upon the meaning of the above italicized words, contained in art. 7, sec. 1, par. 4 (Code § 2-5404) of the Constitution, rests the fate of the present case. There is an array of decisions by this court in

which this provision of the Constitution was applied to given cases and judgments rendered which were made to depend upon whether the facts brought the cases under the Constitution. We will attempt to analyze and discuss some of those decisions later.

But we wish to insure that our own thinking comprehends all and not just a part of the above-quoted portion of the Constitution. There are infinite charities that deserve the plaudits of all mankind, but the Constitution restricts tax exemption of institutions of charity to those and those only that are "purely" charity and also that are "public" charity. Without a positively fixed recognition of the indispensability of the presence of these two qualifying words, courts would ramble in a wilderness of private charitable actions in seeking an answer to their eligibility to tax exemption. We have looked with apprehension upon national legislation under the "general welfare clause" of our Federal Constitution which may be welfare for special groups but not the general public. Our great admiration for all charitable acts must not cause us to overlook the plain mandate of the Constitution. And while we know the human misery caused by inability of many to pay for adequate hospital services, and recognize the sound and wise policy of letting many pay insurance premiums to enable the insurer to furnish hospital service to the few who require it, yet these considerations do not in any degree control or even influence our construction of the Constitution.

The plaintiff's petition attaches a copy of the contract or insurance policy which it issues to its members. Not the public, not just the poor and needy, but those and only those whose application is approved by the petitioner are allowed to obtain the benefits covered by the policy. This means that the petitioner has the right to accept applications from those well able to pay for hospital service and to reject the poor and needy. And every policy holder is required to pay premiums whether he requires services or not, and once he has received the amount of services paid for, he must either leave the hospital before he is physically able or look elsewhere for charity to provide such needed services. This brief recital of relevant facts demonstrates (1) that only such hospital services as are paid for are

available; (2) such services are not available to the public, but confined entirely to the private individuals whose applications and money have been accepted; (3) the poor and needy may all be denied any such services; and (4) only the amount of service specified in the policy and paid for by the members is given, and after that this institution contributes nothing, and charity either private or public is the only hope for additional needed hospital service for those who are unable to pay.

The legislative attempt (Ga. L. 1950, pp. 335, 340; Code, Ann., § 99-1018) to construe the law it was enacting by declaring the institutions therein provided for to be purely public charity and exempt from taxation under the Constitution (Code § 2-5404) is an invasion of the exclusive jurisdiction of the Judicial Department to construe laws and is therefore void. *McCutcheon* v. *Smith,* 199 *Ga.* 685 (35 S. E. 2d 144); *Atlanta National Building &c. Assn.* v. *Stewart,* 109 *Ga.* 80 (35 S. E. 73); *International Business Machines Corp.* v. *Evans,* 213 *Ga.* 333, 335 (99 S. E. 2d 220). That the organization is non-profit and its charter as well as the statute under which it is chartered declare it to be a charitable and benevolent institution exempt from taxation, do not make it such. *Mu Beta Chapter Chi Omega House Corp.* v. *Davison,* 192 *Ga.* 124 (14 S. E. 2d 744). Nor does the fact that it serves a benevolent purpose make it a purely public charity. *Taylor* v. *Trustees of Jesse Parker Williams Hospital,* 190 *Ga.* 349 (9 S. E. 2d 165); *Elder* v. *Henrietta Egleston Hospital for Children,* 205 *Ga.* 489 (53 S. E. 2d 751). Cases involving trusts give the word "charity" a broader meaning than the tax-exemption cases. *Houston* v. *Mills Memorial Home,* 202 *Ga.* 540 (43 S. E. 2d 680).

The following cases, relied on by the plaintiff in error, are inapplicable for the reasons we shall set forth. As pointed out in *Tharpe* v. *Central Georgia Council of Boy Scouts of America,* 185 *Ga.* 810 (196 S. E. 762, 116 A. L. R. 373), the boys—and this includes all boys within the specified ages—may become members without paying dues, and are given various courses of instruction by teachers employed by the scout council. They may use the camp without charge except during the summer convention, when they are required to pay for their food, but all

other facilities are free. Another case so relied upon is *Linton* v. *Lucy Cobb Institute*, 117 *Ga.* 678 (45 S. E. 53). This was a school case, and tax exemption was based on the provision of the Constitution that "all buildings erected for and used as a college, incorporated academy, or other seminary of learning" may be exempted from taxation. Another case relied upon is *Elder* v. *Atlanta-Southern Dental College*, 183 *Ga.* 634 (189 S. E. 254), which turned upon the same provision of the Constitution, and hence neither controls here where another provision of the Constitution is relied upon. In the *Egleston Hospital* case, supra, it was pointed out that all funds received from patients able to pay, as well as $78,716.32 donated by friends, were expended for the operation of the hospital, where those unable to pay were given the services free. We have no such factual situation here. Finally, they rely upon *Williamson* v. *Housing Authority &c. of Augusta*, 186 *Ga.* 673 (199 S. E. 43), and while that case went far to allow tax exemption, it too differs on material facts from the instant case. There, only the poor slum dweller, unable to pay for adequate housing—and this included all such people—were the beneficiaries of the cut-rate housing rent, while here, as pointed out above, no poor or needy person need be given the right to the service offered. It might be confined to those only who are able to pay. There the price is below value, here such need not be true. This distinguishes that case and shows its inapplicability here. We have here neither a requirement that only those in need of help be accepted nor a requirement that those adequately able to pay for such services be excluded. Also, when the amount of services called for in the policy, and hence paid for by the premium called for by the policy, has been given, no free or extra services are given regardless of the distressing need therefor. This is pure and simple insurance in direct competition with private concerns which are engaged in the same business but enjoy no tax-exemption benefit. If our system of private enterprise is to survive, government must not by exempting competitors of free enterprise from taxes aid in destroying it by such unfair competition. The Constitution (Code § 2-5404) does not authorize such tax exemption, and to the extent that Georgia Laws 1950, pp. 335, 340 (Code, Ann., § 99-1018) attempts to

exempt same, it is violative of the Constitution and is void. For the foregoing reasons the lower court did not err in sustaining the demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*