A93A1545. GWINNETT COUNTY BOARD OF TAX ASSESSORS
v. GEORGIA SCHOOL BOARD ASSOCIATION.
(439 SE2d 666)

POPE, Chief Judge.

The issue in this case is whether property located in Gwinnett County belonging to the Georgia School Board Association (GSBA) is entitled to exemption from ad valorem taxation under OCGA § 48-5-41 (a) (4) because the GSBA is a "purely public charity." The trial court ruled that the GSBA is entitled to exemption from ad valorem taxation for that reason and granted GSBA's motion for summary judgment. Plaintiff Gwinnett County Board of Tax Assessors appeals. We reverse.

Recently in *York Rite &c. v. Bd. of Equalization*, 261 Ga. 558 (408 SE2d 699) (1991), our Supreme Court clarified the factors which must be present for an organization to qualify as an institution of "purely public charity" as set forth in OCGA § 48-5-41 (a) (4). "First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits." Id. at 558. Applying those factors to the facts of this case, we find that the trial court erred in granting summary judgment in favor of GSBA.

The evidence does not support GSBA's argument that it is an organization devoted entirely to charitable pursuits. While GSBA serves a laudable purpose of providing needed services to and representing local school districts and boards of education throughout Georgia, " 'no matter how high the ideals of an institution, nor how lofty its purposes, in order for it to qualify as a charitable institution for tax exemption under (OCGA § 48-5-41 (a) (4)), it must have the sole purpose and activity of dispensing *public* charity.' " Id. at 559

(quoting *Camp v. Fulton County Med. Society*, 219 Ga. 602, 605 (135 SE2d 277) (1964). The record reveals that GSBA uses the property in question for the following purposes: (1) it serves as the general offices of GSBA; (2) meetings of directors, committees and officers are held there; (3) publications and information for the member school boards are prepared there and dispensed to the member boards; (4) training sessions for persons associated with the member school boards are prepared and held there; (5) policies for members are developed there; (6) an insurance program for its members is serviced there; and (7) searches for superintendents are conducted there. Funding for the GSBA is derived from several sources: (1) dues are paid by each member school board; (2) superintendent searches are conducted for a fee of $3,000; (3) policy manuals are prepared for the member boards for a fee of $7,500 and updated annually at a cost of $850; (4) legal reference manuals are provided to members for a fee of $200 and updated annually at a cost of $65; (5) fees are charged for training programs; (6) certain funds are derived from the insurance program; and (7) certain funds are received from the State Board of Education.

Based on this evidence, we have no difficulty concluding that rather than providing purely public charitable services, the GSBA, in exchange for fees and dues, provides needed services to local school boards. Its status as a not for profit organization does not change the nature of its services to charitable. In so holding, we are mindful that the term "charity" has been broadly defined to include " 'substantially any scheme or effort to better the condition of society or any considerable part of it.' " *Tharpe v. Central Ga. Council of Boy Scouts of America*, 185 Ga. 810, 813 (196 SE 762) (1938). However, although school children may ultimately benefit from some of the services provided by GSBA, the only direct beneficiaries are the member boards and the small class of persons associated with those boards. Furthermore, it is difficult to imagine how any considerable part of society could benefit from certain of the services provided by the GSBA to its members, such as insurance coverage. See *Bd. of Equalization v. York Rite &c.*, 209 Ga. App. 359 (433 SE2d 299) (1993), cert. denied.

We are also guided in reaching this decision by the Georgia Supreme Court's decision in *Ga. Congress of Parents & Teachers v. Boynton*, 239 Ga. 472 (238 SE2d 113) (1977). In that case, the Georgia Supreme Court was persuaded that the Georgia Congress of Parents and Teachers was not a "purely public charity" because any local group wishing to be affiliated with the Georgia Congress of Parents and Teachers must pay dues and its headquarters are available for use only to those who pay dues. Id. at 473-474. The same is true of the GSBA.

*Judgment reversed. Birdsong, P. J., and Andrews, J., concur.*

DECIDED NOVEMBER 17, 1993 —
RECONSIDERATION DENIED DECEMBER 16, 1993 — 

*Jonathan A. Weintraub, Caryl B. Sumner, William J. Linkous III*, for appellant.

*Heard, Leverett & Phelps, E. Freeman Leverett*, for appellee.