A95A0445, A95A0446, A95A0447, A95A0448, A95A0449, A95A0450.
CHATHAM COUNTY BOARD OF TAX ASSESSORS
v. SOUTHSIDE COMMUNITIES FIRE PROTECTION, INC.
(six cases).
(457 SE2d 267)

ANDREWS, Judge.

These cases involve six parcels of land, which are owned by Southside Communities Fire Protection, Inc. ("Southside"). The facts and the legal issues involved in the cases are identical. In its sole enumeration in each case, the Chatham County Board of Tax Assessors ("the Board") contends that the trial court erred in concluding after a bench trial that Southside is a purely public charity pursuant to OCGA § 48-5-41 (a) (4) and, therefore, exempt from ad valorem taxation for the tax year 1992.

Prior to the bench trial, the parties stipulated to most of the relevant facts and in an excellent 17-page order, the Chatham County court recited the following essentially undisputed facts. Southside performs fire fighting and rescue services in large portions of Chatham County in which the county government itself provides no fire protection. Southside is the only protection for the unincorporated areas of the county, except for the Isle of Hope. Although Savannah has a paid professional fire department, it contracts with Southside to provide fire protection to southern portions of the city. Chatham County granted Southside exclusive rights to service these districts. Southside and other fire departments within the county have also agreed to reinforce each other as needed in the event of major emergencies. Southside responds only to calls within its designated fire district, unless it receives a call for mutual assistance from another fire department.

Southside is a non-profit, tax-exempt 501 (c) (4) corporation which is afforded tax-exempt status by the Internal Revenue Service. Southside derives no profits, nor does it distribute any income pursuant to its non-profit status. Southside uses its receipts only to pay expenses. Southside issues no shares of stock, pays no dividends, makes no profit, and accumulates no retained earnings or endowment. It has a board of directors whose members receive no compensation for their services and are elected by the subscribers; its labor force consists primarily of volunteer firefighters who receive no pay for their time and skills. In 1991 and 1992, Southside had 48 paid employees and 150 volunteers.

In addition to fire fighting, Southside provides rescue services within its area of responsibility. According to the stipulation, Southside "participates in wash downs, operates the 'jaws of life' and provides miscellaneous police assistance, within its designated fire districts; operates a first responders unit in the Skidaway Island area

with a defibrillator and trained state certified first responders; and, provides fire prevention classes to various organizations; and, does not bill Chatham County for any of these services." Southside also performs planning and prevention tasks such as inspections, fire suppression planning, response coordination, and fire prevention education. Volunteers and paid employees give talks and classes to community groups.

The parties stipulated that the property at issue is used exclusively for the provision of fire protection and rescue services within its designated fire districts.

Southside utilizes a subscription service offered to all persons and entities within its designated fire districts to cover the expenses of providing the services. Southside's annual subscription fees are based on the values of the properties to be provided such services. If Southside provides a service to a non-subscriber, the non-subscriber is billed for the cost of the service. City of Savannah residents pay for their fire protection services through payment of property and sales taxes. Southside has, on occasion, filed suit to collect the bill from a non-subscriber.

Southside responds to all fires, regardless of subscription status. The court's order noted that more than ten years ago Southside's policy "may have been" not to fight fires on the property of non-subscribers. Nevertheless, the court found that Southside's policy of responding to all fires is not advertised in the correspondence it sends to non-subscribers in the unincorporated areas of the county. The court noted that this correspondence implies that fire protection will be available only if an application is completed and the fee paid. The court also found that Southside does not advertise that its policy is to give a reduced rate or to waive the fee altogether for indigents, although it does enroll subscribers without a fee when informed of financial problems.

Southside's policy with respect to apartment complexes, shopping centers, and trailer parks is that the owners are requested to pay for the entire complex, instead of individuals purchasing a subscription. Southside requires that if a trailer park owner buys protection, it must be for the entire trailer park complex; the individual trailer owners are not allowed to purchase coverage separately.

On or about April 16, 1992, the Board removed the tax-exempt status of properties owned by Southside. Southside appealed the Board's decision to the Chatham County Board of Equalization, which reversed that decision and held that the properties were exempt. The Board appealed this decision to the superior court, and the six cases were consolidated.

After conducting its bench trial, the trial court ruled that Southside was entitled to tax-exempt status as a purely public charity pur-

suant to OCGA § 48-5-41 (a) (4). Here, the Board argues that Southside does not qualify as an institution of purely public charity and that the test set forth in *York Rite Bodies of Freemasonry &c. v. Bd. of Equalization &c.*, 261 Ga. 558 (408 SE2d 699) (1991), was not met. The Board contends that tax exemptions are to be strictly construed and that Southside has failed to meet the burden of proving the exemption.

In *York Rite*, supra at 558, our Supreme Court stated: "[i]n determining whether property qualifies as an institution of 'purely public charity' as set forth in OCGA § 48-5-41 (a) (4), three factors must be considered and must coexist. First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits."

The Board first contends that Southside does not qualify for the exemption under the first prong of the *York Rite* test, in that it is not an institution devoted entirely to charitable pursuits. "In determining whether the owner is an institution devoted entirely to charitable pursuits, it must be remembered that the mere facts that the owner is a non-profit institution, that its charter declares it to be a charitable institution, and that the institution serves a benevolent purpose do not necessarily lead to the conclusion that the institution is exempted from ad valorem taxation by OCGA § 48-5-41 (a) (4). [Cits.] While all of those should be considered, no one of them will be conclusive. Instead, the facts of each case must be viewed as a whole and all of the circumstances surrounding the institution must be considered. [Cits.]" *York Rite*, supra at 558-559.

The Board cites numerous financial facts regarding Southside which it contends establish that Southside is simply a business which performs fire fighting services, rather than a charitable institution. The Board notes that the contract and subscription fees which Southside collected during 1991 totaled over $2,000,000; that Southside accumulated significant interest over the period in question; and that property which Southside owned appreciated during the year. The Board argues that a large portion of Southside's income goes to compensating its employees and instructing volunteer fire fighters, and that Southside uses its remaining income to buy land, buildings, and equipment and to stockpile cash assets.

Additionally, the Board argues that although Southside has a professed policy of providing reduced rates for those who are unable to pay, this policy is not advertised to potential subscribers. It contends that Southside's policy of responding to all fires is not advertised and that the Southside mailings imply that fire protection will be available only to subscribers.

The Board's arguments break down into two major components: that the manner in which Southside bills its subscribers and the manner in which it manages its assets establish that it is not devoted entirely to charitable pursuits. With respect to the first issue, the fact that Southside charges a fee for subscribers is not dispositive. See generally *Tharpe &c. v. Central Ga. Council of Boy Scouts &c.*, 185 Ga. 810 (196 SE 762) (1938); *Central Bd. on Care of Jewish Aged v. Henson*, 120 Ga. App. 627 (1) (171 SE2d 747) (1969); *Peachtree on Peachtree Inn v. Camp*, 120 Ga. App. 403 (170 SE2d 709) (1969). Here, the evidence established that the fees Southside charged were used to offset expenses and that subscribers were billed according to their ability to pay. The evidence also showed that Southside provided its services to all in need of assistance, not just to subscribers. Compare *Gwinnett County Bd. of Tax Assessors v. Ga. School Bd. Assn.*, 211 Ga. App. 437 (439 SE2d 666) (1993); *Ga. Congress of Parents & Teachers v. Boynton*, 239 Ga. 472 (238 SE2d 113) (1977). Southside had no retained earnings, no dividends, no distribution of profits to members, no endowment, and the evidence showed that the salaries it paid were comparable to those paid to other fire fighters. We agree with the trial court's conclusion that the manner in which the fees were collected supported Southside's claim that it was a "purely public charity."

Moreover, the manner in which Southside uses its property also showed it to be devoted entirely to charitable pursuits. The evidence showed that Southside used its property to produce money, but that the resulting money was used solely to offset expenses. There is no evidence that Southside used the money it accumulated to benefit a small group; instead, the evidence showed that the money generated went to benefiting the general public. Accordingly, we find that Southside met the first prong of the *York Rite* test.

The Board also argues that Southside fails under the second prong of the *York Rite* test in that its charitable pursuits are not for the benefit of the public. First, "[a] familiar meaning of the word 'charity' is almsgiving, but as used in the law it may include 'substantially any scheme or effort to better the condition of society or any considerable part of it.' Charity, as used in tax exemption statutes, is not restricted to the relief of the sick or indigent, but extends to other forms of philanthropy or public beneficence, such as practical enterprises for the good of humanity, operated at moderate cost to the beneficiaries, or enterprises operated for the general improvement and happiness of mankind." (Citations and punctuation omitted.) *Tharpe*, supra at 813-814.

Contrary to the Board's contentions, we find that Southside's services were for the benefit of the public. See generally *Peachtree on Peachtree Inn*, supra. It is undisputed that Southside provides fire

protection and rescue services to all of the public within its region, regardless of the subscription status of the property owner. Moreover, Southside does not turn away subscribers due to their inability to pay the subscription fee. Although the court concluded that Southside's reduced rate policy and non-discriminatory response policy was not advertised in its correspondence, this fact does not alter the fact that Southside performs its charitable service for the benefit of the public. Southside's policy with regard to subscribers who are located in trailer parks and shopping centers does not alter this conclusion. Moreover, the evidence supported the trial court's conclusion that the organization operated for the benefit of the public and not for the benefit of its employees.

The Board argues that the third prong of the *York Rite* test is not met and that Southside's property is not exclusively devoted to charitable pursuits. The parties stipulated that the property is exclusively devoted to the provision of fire protection and rescue services. Given the facts of this case, we conclude, as did the trial court, that this prong of the *York Rite* test is met. The Board also argues the court erred in finding that fire fighting was a charitable pursuit, as a matter of law. Again, given the specific facts before us, we find that Southside operated as a "purely public charity" and the Board's argument is misplaced.

Viewing the facts of this case as a whole, we find proper the trial court's conclusion that the Southside properties were exempt from ad valorem taxation.

*Judgments affirmed in Case Nos. A95A0445, A95A0446, A95A0447, A95A0448, A95A0449, and A95A0450. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MAY 2, 1995 —

*Brennan, Harris & Rominger, Julie D. Majer,* for appellant.
*Thompson & Associates, Robert T. Thompson, Jr., Robert P. Manning,* for appellee.