A99A1462. COBB COUNTY BOARD OF TAX ASSESSORS
v. MARIETTA EDUCATIONAL GARDEN CENTER, INC.
(521 SE2d 892)

McMURRAY, Presiding Judge.

The Cobb County Board of Tax Assessors and the Board of Equalization (the "Board") denied applications for ad valorem tax exemption as a purely public charity under OCGA § 48-5-41 (a) (4) filed by the Marietta Educational Garden Center, Inc. (the "Garden Center"). The Garden Center appealed to the superior court for a de novo determination pursuant to OCGA § 48-5-311 (g) (3). On cross-motions for summary judgment, the following undisputed facts were adduced:

The Garden Center is the owner of certain real property located at 505 Kennesaw Avenue N.W., Marietta, Georgia. After receiving the property as a gift in 1967, the Garden Center restored it, and the property thereafter was placed on the National Register of Historic Places. For the first time in nearly 30 years, the Garden Center applied for exemption from ad valorem property taxes in 1996 upon notice of reassessment issued by the Cobb Board of Tax Assessors doubling its taxes.

The Garden Center's Articles of Incorporation and Bylaws pro-

vide that its objective is to "receive gifts and grants of money and property of every kind and to administer the same for charitable, educational, civic, and philanthropic uses and to do anything necessary and proper for the accomplishment of these purposes." Programs and projects promoted by the Marietta Garden Center include:

> Continuing education[;] Close association with other members to foster ideas and ideals[;] Growing and exhibiting flowers, fruits, and vegetables[;] Environmental studies[;] Beautification of parks, schools, etc.[;] Assisting other civic clubs in their projects[;] Paper drives for revenue and conservation of trees[;] Tour of homes, showing tasteful decorations[;] Planning lovely lawns and gardens[;] Flower Show Schools, Landscape Design Schools and Gardening Study Courses[;] A library of all phases of garden club activities[; and] Establishing woodland trails for the blind.

The Marietta Council of Garden Clubs, Inc. (the "Council") operates and maintains the Garden Center "for the benefit of the member clubs and the community." The Council's bylaws also pertinently provide:

> The objects of the Council shall be to coordinate the interests of the Garden Clubs of Marietta and Cobb County; to bring them into close relations for mutual helpfulness by association, conference and correspondence; to promote the love of gardening; to promote the study of horticulture; to protect our native trees, wild flowers and birds; and to encourage civic beautification, conservation and pollution control.

The Council assesses its 34 affiliated garden clubs annual dues of $5 per year per club member. Additionally, except in the month of January, the Council rents the Garden Center for weddings, social events, and other activities. Income derived from rental fees is used directly to offset expenses incurred in operating and maintaining the Garden Center. The Center was rented 51 times in 1995; 56 times in 1996; and 51 times in 1997. For 1995, the Garden Center's rental income was $59,450 or 87.5 percent of its 1995 budget. In 1996, rental income was $48,331 or 87.8 percent of that year's budget. In 1997, rental income as a percentage of the annual budget, was 72.4 percent or $60,700.

No private shareholder, person, or entity benefits from any of the fees collected by the Garden Center. When the Garden Center is not rented, it is used as a monthly meeting place for member garden clubs and club activities, rent free. While the public may not use the

Garden Center on a no-fee basis, the visiting public is allowed to tour its buildings and grounds without charge.

The superior court granted the Marietta Garden Center's cross-motion for summary judgment and denied the Board's motion for summary judgment, concluding that: (a) the Board violated the equal protection doctrine of the Georgia and United States Constitutions taxing the property of the Garden Center while exempting like property of another owner; and (b) the Garden Center qualified as an institution of purely public charity whose property was entitled to exemption from taxation under OCGA § 48-5-41 (a) (4). *Held*:

In two related enumerations of error, the Board complains of the grant of the Garden Center's cross-motion for summary judgment and the denial of its own motion, arguing the Garden Center failed to preserve its equal protection claim on appeal and failed to establish its status as a purely public charity entitled to exemption from ad valorem property taxation.

1. The record reflects the Garden Center first raised its equal protection claim in support of its motion for summary judgment in the superior court, arguing the Board's grant of tax exemptions to the Young Men's Christian Association and the Young Women's Christian Association as institutions of purely public charity as to their Cobb County properties entitled the Garden Center to similar tax treatment.

> Where the taxpayer appeals an assessment of the Board of Tax Assessors to the Board of Equalization, and from the decision of the latter to the superior court for a de novo hearing [OCGA § 48-5-311 (g)], he is not permitted to raise in the superior court appeal issues which were not raised in the original appeal to the Board of Equalization. *Camp v. Boggs*, 240 Ga. 127 (1) (239 SE2d 530) (1977).

*Mundy v. Clayton County Tax Assessors*, 146 Ga. App. 473 (2) (246 SE2d 479).

The Garden Center's notice of appeal to the Board[1] failed to raise the matter of the denial of equal protection as entitling it to exemp-

---

[1] The Garden Center's appeal to the Board pertinently provided:
Please allow this correspondence to serve as formal notice of our client's appeal of the decision rendered by the Board of Tax Assessors denying the Center's application for exemption. Our client believes that its property is most eligible to receive tax exempt status in that it is not operated for profit and provides educational, civic, and charitable services to not only the City of Marietta and Cobb County, but to the entire state. In addition, the Center does not have paid employees and is operated through the volunteer efforts of members of the community who realize the great needs which the operation of the Center fulfills.

tion from taxation as a purely public charity under OCGA § 48-5-41 (a). Consequently, the Garden Center failed to preserve its equal protection claim on appeal, whether to the Board or thereafter to the superior court. Since the Garden Center's equal protection claim was not before the superior court for de novo review of the parties' contentions before the Board of Equalization, the trial court lacked authority to rule the Garden Center had been denied equal protection as a basis for granting its cross-motion for summary judgment. *Camp v. Boggs*, 240 Ga. 127 (1), 128, supra.

2. The Board contends the Garden Center is not a purely public charity entitled to exemption from ad valorem taxation, arguing the Garden Center fails to meet the controlling three-prong test established by *York Rite Bodies &c. of Savannah v. Bd. of Equalization of Chatham County*, 261 Ga. 558 (2) (408 SE2d 699).

> "In determining whether property qualifies as an institution of 'purely public charity' as set forth in OCGA § 48-5-41 (a) (4), three factors must be considered and must coexist. First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits." *York Rite Bodies &c. of Savannah v. Bd. of Equalization of Chatham County*, 261 Ga. 558 (2)[, supra].

*Institute of Nuclear Power Operations v. Cobb County Bd. of Tax Assessors*, 236 Ga. App. 48, 51 (1) (510 SE2d 844).

The Garden Center urges its entitlement to ad valorem tax exemption in that: (a) its articles of incorporation and bylaws are directed at charitable purposes; (b) its programs and activities in the Marietta-Cobb County community are charitable in nature; (c) its restored property, an historical landmark, is open to the touring public in addition to its dues-paying membership and those renting the property for use as a reception facility; and (d) its rental income is used exclusively to offset operations and maintenance expenses.

> " 'A familiar meaning of the word "charity" is almsgiving, but as used in the law it may include "substantially any scheme or effort to better the condition of society or any considerable part of it." (Cit.) " 'Charity,' as used in tax exemption statutes, is not restricted to the relief of the sick or indigent, but extends to other forms of philanthropy or public beneficence, such as practical enterprises for the good of humanity, operated at moderate cost to the beneficiaries, or enterprises operated for the general improvement and hap-

piness of mankind." 61 CJ 455, § 505,' *Sharpe v. Central Ga. Council, B.S.A.*, 185 Ga. 813 (196 SE 762, 116 ALR 373)." *Peachtree on Peachtree Inn v. Camp*, 120 Ga. App. 403, 409 (170 SE2d 709). But of the infinite charities that deserve the plaudits of mankind, our law "restricts tax exemption of institutions of charity to those and those only that are 'purely' charitable and also that are 'public' charity." *United Hosp. Svc. Assn. v. Fulton County*, 216 Ga. 30, 32 (114 SE2d 524).

*Institute of Nuclear Power Operations v. Cobb County Bd. of Tax Assessors*, 236 Ga. App. at 52, supra.

The test of whether property is exempt from taxation . . . as an institution of "purely public charity" is not whether the owner is an organization of purely public charity, but whether the property is dedicated to charity and used exclusively as an institution of "purely public charity." *Tharpe v. Central Ga. Council of Boy Scouts of America*, 185 Ga. 810 (196 SE 762, 116 ALR 373). That the organization is nonprofit, is not used for commercial purposes, and its charter declares it to be a charitable and benevolent institution, do not make it a charitable institution. *Mu Beta Chapter Chi Omega House Corp. v. Davison*, 192 Ga. 124 (14 SE2d 744). Nor does the fact that it may serve a benevolent purpose make it such. *Taylor v. Trustees of Jesse Parker Williams Hospital*, 190 Ga. 349 (9 SE2d 165). See *United [Hosp. Svc.] Assn. v. Fulton County*, 216 Ga. 30[, supra].

*Historic House Museum Corp. v. Camp*, 223 Ga. 510, 511 (156 SE2d 361).

Certainly no one would dispute that the Garden Center's contribution to aesthetics and appreciation for the environment in Marietta and Cobb County benefits all who visit the Garden Center. Nevertheless, in our view, such benefit to the public must inevitably be regarded as subordinate to those benefits the Garden Center provides the memberships of 34 member clubs through the free use of its facilities and those renting them. *Historic House Museum Corp. v. Camp*, 223 Ga. 510, supra.

The Garden Center's reliance on *Chatham County Bd. of Tax Assessors v. Southside Communities Fire Protection*, 217 Ga. App. 361, 365 (457 SE2d 267), and *Elder v. Henrietta Egleston Hosp. for Children*, 205 Ga. 489, 492 (53 SE2d 751), for the proposition that rental income does not foreclose entitlement to exemption from ad valorem taxes as a purely public charity is misplaced. The Garden

Center correctly notes that the evidence in these cases showed exemption from ad valorem taxation despite the use of property for the production of money used thereafter only to offset expenses. Unlike the circumstances in the case sub judice, the services provided by those charities were provided to "all"[2] requiring assistance, rather than as incident to status as a dues-paying member or private person having purchased a service for a fee. Inasmuch as the undisputed evidence of record shows the contrary in the case sub judice, we conclude the Garden Center is not dispensing purely public charity. In the context of the three-prong test established by *York Rite*, supra, the evidence shows that the payment of member club dues and rent to the Garden Center results in the provision of substantial services and benefits not available to the general public, that is, the free use of the Garden Center to dues-paying member clubs and their memberships in support of a wide variety of club activities and programs and the use of the facility to non-members paying a rental fee. To the extent this is true, the Garden Center may neither be deemed entirely engaged in charitable pursuits nor its charitable pursuits deemed purely public. For the same reasons, it follows that the Garden Center's property is not used exclusively for charitable objectives. Since the Garden Center failed to meet the three-prong test of *York Rite*, supra, the superior court erred in determining the Garden Center was purely a charitable institution entitled to exemption from ad valorem taxes. Under the undisputed facts, the superior court further erred in denying the Board's motion for summary judgment.

*Judgment reversed. Andrews, P. J., concurs. Ruffin, J., concurs specially.*

---

[2] In reaching this conclusion in *Elder v. Henrietta Egleston Hosp.*, 205 Ga. at 491, supra, the Supreme Court noted that a contrary result would have been required had the case been decided before the adoption of the Constitution of 1945 under such cases as *Trustees of the Academy of Richmond County v. Bohler*, 80 Ga. 159 (7 SE 633) which held the property of purely public charitable institutions was taxable "when used for private or corporate profit or income." *Elder*, supra.

Art. VII, Sec. I, Par. IV of the State Constitution of 1945 pertinently provided:

"[A]ll institutions of purely public charity; . . . provided the property so exempted be not used for the purpose of private or corporate profit and income, distributable to shareholders in corporations owning such property or to other owners of such property, and any income from such property is used exclusively for religious, educational and charitable purposes, or for either one or more of such purposes and for the purpose of maintaining and operating such institution."

*Elder v. Henrietta Egleston Hosp.*, 205 Ga. at 492, supra.

The use of property to produce income as not defeating entitlement to exemption from ad valorem property taxation is reflected today by the third prong of *York Rite Bodies &c. of Savannah v. Bd. of Equalization of Chatham County*, 261 Ga. 558 (2), supra. ("[T]he use of the property must be exclusively devoted to those charitable pursuits.").

RUFFIN, Judge, concurring specially.

I concur fully with Division 2 of the majority opinion, holding that the Garden Center does not qualify as a "purely public charity" so as to be entitled to an exemption from ad valorem taxation. I also agree that the trial court erred in relying on the Garden Center's equal protection argument as a basis for its ruling, but write separately to express my reasoning on this issue.[3]

In *Camp v. Boggs*, 240 Ga. 127, 128 (1) (239 SE2d 530) (1977), the Supreme Court noted that Code Ann. § 92-6912 (5) (A) (now OCGA § 48-5-311 (e) (1)) allowed a taxpayer, in an appeal to a county board of equalization, to raise " 'matters of taxability, uniformity of assessment, and value.' " The Court further noted that (1) the statute required the notice of appeal to " 'specifically state the grounds for appeal,' " (2) the board of equalization was required to specifically decide in writing all questions presented to it, and (3) the statute allowed the taxpayer to appeal *decisions* of the board of equalization to the superior court. Id. The Supreme Court construed the statute to mean that a taxpayer may not, in an appeal to the superior court, assert a different basis for appeal from that raised before the board of equalization. Thus, for example, where the sole issue presented to the board of equalization is the taxability of the subject property, the taxpayer may not raise the separate issue of uniformity of assessments in a de novo appeal to the superior court.

Since the Supreme Court's decision in *Camp*, the statute has been amended to delete the requirement that a notice of appeal to the board of equalization " 'specifically state the grounds for appeal.' " See Ga. L. 1990, pp. 1361-1362, § 1. The statute now provides that

[a] written objection to an assessment of real property received by a county board of tax assessors stating the location of the real property and the identification number, if any, contained in the tax notice shall be deemed a notice of appeal by the taxpayer *under the grounds listed in paragraph (1) of this subsection* [i.e., taxability, uniformity of assessment, and value].

(Emphasis supplied.) OCGA § 48-5-311 (e) (2) (A). Under the current statute, therefore, where a taxpayer files a proper notice of appeal without specifying the grounds for the appeal, the notice of appeal is deemed to raise each of the three statutory grounds.

---

[3] Contrary to the Garden Center's contention, I believe this issue, which was addressed in the Board's brief, comes within the scope of the Board's first enumeration of error, which contends that it was entitled to summary judgment because the Garden Center was not a purely public charity.

In this case, however, the notice of appeal filed by the Garden Center clearly indicated that the only ground for appeal was the taxability of the subject property. The Garden Center admits in its appellate brief that its appeal to the board of equalization was based on the issue of taxability. Moreover, its notice of appeal to the superior court also indicated that the only issue raised was taxability. Accordingly, it is clear that the only issue presented to the board of equalization for decision was the taxability of the subject property.

The Garden Center concedes that, under *Camp*, a taxpayer may not appeal to the board of equalization based on one of the three statutory grounds and then raise a different ground on appeal to the superior court. However, it asserts that its equal protection argument in fact relates to the issue of taxability that was presented to the board of equalization. This assertion is without merit.

Reduced to its essence, the Garden Center's equal protection argument is as follows: (1) regardless of whether the Garden Center meets the criteria for a "purely public charity" as set forth in *York Rite Bodies &c. of Savannah v. Bd. of Equalization of Chatham County*, 261 Ga. 558 (2) (408 SE2d 699) (1991), two other entities in allegedly similar circumstances were previously approved for tax-exempt status by the Cobb County Board of Tax Assessors; (2) by not giving the Garden Center tax-exempt status, the board of tax assessors unlawfully treated the Garden Center differently from similarly situated taxpayers. The success or failure of the Garden Center's equal protection argument thus turns not on whether the Garden Center in fact meets the criteria for a "purely public charity," but on whether it is unlawful to treat the Garden Center differently from other similarly situated taxpayers. It is thus clear that the Garden Center's equal protection argument is in fact a challenge to the *uniformity* of the Board's assessments rather than to the *taxability* of the Garden Center's property. The fact that the equal protection argument is couched in constitutional terms does not change the analysis, as county boards of equalization are authorized to consider constitutional challenges to tax assessments. See *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 210 (1) (367 SE2d 43) (1988). As the Supreme Court noted in *Delta Air Lines v. Coleman*, 219 Ga. 12, 19 (4) (131 SE2d 768) (1963),

[t]he discrimination in taxation which the equal protection clauses forbid is the failure of the taxing authorities to tax all like property which is subject to taxation equally or to tax the property of one owner and exempt like property belonging to another owner.

That the Garden Center's equal protection argument does not in

fact go to the *taxability* of its property is made more clear when we consider that

> county boards of equalization have ample authority to remedy deficiencies in the uniformity of assessments required by the Constitution, including the authority to order the entire digest recompiled if such action is necessary to obtain uniformity.

*Butts County v. Briscoe*, 236 Ga. 233, 235 (1) (223 SE2d 199) (1976). See also OCGA § 48-5-311 (d) (2). Thus, even if the Garden Center could show that it was treated differently from a similarly situated taxpayer, this would not automatically lead to the conclusion that its property was not taxable. As the majority correctly notes in Division 2, the Garden Center does not meet the criteria for a purely public charity as laid down by the Supreme Court in *York Rite Bodies*, supra. Had the Garden Center raised the issue of uniformity before the board of equalization, and established that it was treated differently from other similarly situated taxpayers, the Board could have remedied the situation by reexamining the taxability of the other taxpayers' property, rather than by giving the Garden Center an unauthorized tax exemption.

Because the Garden Center's equal protection argument is in fact a challenge to the uniformity of the Board's assessments rather than a challenge to the taxability of the subject property, and because the issue of uniformity was not presented to the board of equalization for decision, I agree with the majority that the trial court erred in considering such issue in ruling on the parties' motions for summary judgment.

DECIDED AUGUST 30, 1999

*Haynie & Litchfield, Douglas R. Haynie, Emilie K. Petrovich*, for appellant.

*Moore, Ingram, Johnson & Steele, John H. Moore, J. Kevin Moore*, for appellee.