**THIRD DIVISION**
**DOYLE, P. J.,**
**HODGES and WATKINS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 10, 2024**

# In the Court of Appeals of Georgia

### A24A0963. LOWNDES COUNTY BOARD OF TAX ASSESSORS v. LIFESOUTH COMMUNITY BLOOD CENTERS, INC.

WATKINS, Judge.

In this property tax appeal, the Lowndes County Board of Tax Assessors ("the County Board") appeals the superior court's order granting summary judgment to LifeSouth Community Blood Centers, Inc. Specifically, the superior court ruled that LifeSouth's property is exempt from ad valorem taxation under OCGA § 48-5-41 (a) (4). We affirm.

Under OCGA § 48-5-311 (e) (1) (A) (i), a property owner or taxpayer who disagrees with the County Board's assessment of taxability may appeal the County Board's decision to the corresponding County Board of Equalization ("BOE"). From

there, the taxpayer or the County Board may appeal the BOE's decision to the superior court, which reviews the matter de novo.[1] Before the superior court,

> [s]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . . In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.[2]

The facts material to this case are uncontested. In 1973, Congress enacted a National Blood Policy recognizing the federal interest in establishing a community-based, volunteer blood donor system across the United States. The Policy has been implemented by a network of community and regional blood centers that collect and distribute blood to hospitals in their respective geographic areas.

LifeSouth operates as a "community blood center" within this framework. It collects blood and blood products from volunteer donors; notably, LifeSouth is not a

---

[1] See OCGA § 48-5-311 (g) (1), (3); *Cherokee County Bd. of Tax Assessors v. Mason*, 340 Ga. App. 889, 889-890 (798 SE2d 32) (2017).

[2] (Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

plasma center where individuals can receive payment in exchange for providing plasma. With locations in Georgia, Florida, and Alabama, all of LifeSouth's other properties are exempt from ad valorem taxation. According to LifeSouth, its blood donation and collection work is nearly identical to work done by the American Red Cross and the Shepherd Community Blood Center, and the properties of both of those entities are exempt from ad valorem property taxation under the public charity exemption. LifeSouth has always operated a non-profit corporation and is qualified by the Internal Revenue Service as a tax-exempt entity under 501(c)(3) of the federal Internal Revenue Code.

LifeSouth does not sell blood or blood components directly to patients. Instead, it distributes those products to hospitals, which compensate LifeSouth for the products. The hospitals are then obliged to provide blood to their patients without regard to their ability to pay. LifeSouth uses the money it receives from hospitals to pay its employees and to cover the costs of collecting, testing, and shipping the blood. If LifeSouth ever dissolved, it would be required to disperse its assets to other charities.

This case concerns LifeSouth's claim that property it owns in Lowndes County is exempt from ad valorem taxation under OCGA § 48-5-41 (a) (4), the public charity

exemption. After the County Board assessed LifeSouth's property as taxable for tax years 2020 and 2021, LifeSouth appealed the County Board's assessment to the BOE, which ruled in LifeSouth's favor. The County Board appealed the BOE's decisions to the superior court, which consolidated the matters into a single appeal and entered summary judgment for LifeSouth. The County Board then filed this appeal.

"Anyone seeking a tax exemption must carry the burden of proof to show entitlement, and the exemption statute is strictly construed against the [entity] claiming the exemption."[3]

OCGA § 48-5-41 (a) (4) provides that "institutions of purely public charity" are exempt from ad valorem property taxes in Georgia.[4] To qualify for this exemption, three criteria must be met: "(1) the institution must be devoted entirely to charitable pursuits; (2) the charitable pursuits must be for the benefit of the public; and (3) the property must be used exclusively for those charitable pursuits."[5]

---

[3] (Citation and punctuation omitted.) *Mason*, 340 Ga. App. at 889.

[4] See *York Rite Bodies of Freemasonry of Savannah v. Bd. of Equalization of Chatham County*, 261 Ga. 558 (408 SE2d 699) (1991).

[5] *Fulton Co. Bd. of Tax Assessors v. Visiting Nurse Health System of Metro. Atlanta, Inc.*, 243 Ga. App. 64, 66 (2) (532 SE2d 416) (2000) (citing *York Rite*, 261 Ga. at 558-559 (2)).

This case concerns only the second element of the foregoing test as the County Board does not dispute that LifeSouth meets the first and third criteria. With respect to the second element, we have explained that

> a familiar meaning of the word 'charity' is almsgiving, but as used in the law it may include substantially any scheme or effort to better the condition of society or any considerable part of it. Charity, as used in tax exemption statutes, is not restricted to the relief of the sick or indigent, but extends to other forms of philanthropy or public beneficence, such as practical enterprises for the good of humanity, operated at moderate cost to the beneficiaries, or enterprises operated for the general improvement and happiness of mankind.[6]

The County Board contends that LifeSouth's charitable pursuits are not for the benefit of the public because LifeSouth provides blood and blood components to *hospitals* rather than directly to patients. In support of its argument, the County Board relies on our prior opinion in *Gwinnett County Board of Tax Assessors v. Georgia School Board Association ("GSBA"),*[7] regarding the Georgia School Board Association's ("GSBA") claim of the same exemption. We concluded that the GSBA was not

---

[6] (Citation and punctuation omitted.) *Chatham County Bd. of Tax Assessors v. Southside Communities Fire Protection Inc.*, 217 Ga. App. 361, 364 (457 SE2d 267) (1995).

[7] 211 Ga. App. 437 (439 SE2d 666) (1993).

entitled to the exemption, and in our opinion we emphasized that although schoolchildren may eventually benefit from the GSBA's services, the GSBA's "only direct beneficiaries" were its paying member school boards and the small number of people associated with those boards.[8] The County Board analogizes LifeSouth to the GSBA and argues that, although patients may ultimately benefit from the blood LifeSouth collects and distributes, the institution's direct beneficiaries are hospitals.

We are not persuaded by the County Board's argument. Crucially, in *GSBA* we did not hold that whether this exemption applies depends solely on who receives the entity's services. Instead, to conclude that the GSBA was not entitled to the public charity exemption, we considered not only that the GSBA's direct beneficiaries were its member school boards, but also what services the GSBA provided: in exchange for fees and dues, the GSBA provided its members (local school boards who chose to join the GSBA) with information, training, access to insurance coverage, and assistance with searches for superintendents.[9] And again, we emphasized that although

---

[8] Id. at 438.

[9] 211 Ga. App. at 438. See also *Bd. of Equalization v. York Rite Bodies of Freemasonry*, 209 Ga. App. 359, 360 (433 SE2d 299) (1993) ("Because many of the [institution's] activities and resources are used exclusively for the personal benefit of their group, it cannot be said that the group has the *sole* purpose and activity of

schoolchildren may ultimately benefit from the GSBA's services, the Association's services were for the benefit of its member school boards.[10]

In our view, LifeSouth's blood center is more similar to the fire fighting and rescue services company in *Chatham County Bd. of Tax Assessors v. Southside Communities Fire Protection Inc.* — which we concluded was entitled to the exemption.[11] In reaching that conclusion, we emphasized that although the company offered a subscription service to local property owners, it responded to all fires in its designated fire district — regardless of the property's subscription status.[12] We also noted that the company did not turn away subscribers due to their inability to pay the subscription fee and that there was evidence to support the trial court's conclusion that the company operated for the benefit of the public rather than for the benefit of its paid employees.[13]

Here, as a community blood center operating pursuant to the National Blood Policy, LifeSouth collects blood and blood components from volunteer donors,

dispensing *public* charity.").

[10] *GSBA*, 211 Ga. App. at 438.

[11] *Southside*, 217 Ga. App. at 364.

[12] Id. at 362.

[13] Id. at 364-365.

7

processes and tests the blood and blood components for safety, and then distributes the blood and blood components to hospitals for use in patient care. LifeSouth is compensated for the blood it distributes, but it uses those funds to pay for its expenses — not to create profits for its stakeholders. Finally, although LifeSouth gives blood and blood components to hospitals rather than to patients directly, its services provide lifesaving treatments for all patients in the community — including patients who are unable to pay for their treatment.[14]

For the foregoing reasons, we conclude, as did the superior court and the BOE, that LifeSouth's property is exempt from ad valorem taxation under OCGA § 48-5-41 (a) (4).

*Judgment affirmed. Doyle, P.J., and Hodges, J., concur.*

---

[14] See *Southside*, 217 Ga. App. at 362.