A90A0719. YORK RITE BODIES OF FREEMASONRY OF
SAVANNAH et al. v. BOARD OF EQUALIZATION.
(401 SE2d 30)

COOPER, Judge.

This is a consolidated appeal of two cases involving two Masonic lodges, Thunderbolt Lodge No. 693 and York Rite Bodies of Savannah, Georgia ("appellants"). Appellants had been afforded an ad valorem tax exemption on their properties until 1985, when this exemption was revoked by the local taxing authorities. In December 1985 and January 1986, appellants filed appeals to the superior court from the adverse decisions of the taxing authorities. The next plead-

ing was filed by appellants in April 1988, and in November 1988, the Thunderbolt case was dismissed for lack of prosecution as no request for trial had been made by the appellant in that case. In May 1989, appellants filed a motion for declaratory judgment and therein asserted that the properties of appellants were exempt from taxation because appellants are "purely public charities" under OCGA § 48-5-41 (a) (4). Also in May 1989, despite the earlier dismissal of the Thunderbolt case, the two cases were consolidated. By order entered in October 1989, the superior court ruled that the Thunderbolt case was properly dismissed and that the dismissal constituted an adjudication on the merits which prevented the issues from being raised again. As to the York Rite Bodies case, the court, after a lengthy discussion of the controlling authority, determined that the property at issue was not used in such a manner as to qualify it for tax exemption and denied the declaratory judgment. This appeal followed.

1. Upon a review of the record, we determine that the trial court erred by allowing the dismissal of the Thunderbolt case to act as an adjudication of the merits. Contrary to the trial court's ruling, OCGA § 9-11-41 (b) states "[a] dismissal for failure of the plaintiff to prosecute does not operate as an adjudication upon the merits. . . ." Consequently, appellants were not barred by the doctrine of res judicata from reasserting the claims in the Thunderbolt case. *Idowu v. Lester*, 176 Ga. App. 713 (1a) (337 SE2d 386) (1985). See *Leach v. Aetna Cas. &c. Co.*, 172 Ga. App. 785 (324 SE2d 494) (1984). The trial court should have considered the merits of the Thunderbolt case. Since the issues presented by both cases are identical, we will consider herein appellants' enumeration of errors as to both cases.

2. In their first and fifth enumerations of error, appellants assert that the trial court erred in its interpretation of the "purely public charity" doctrine. The two properties at issue are Masonic lodges, used exclusively as meeting places for Masonic and Masonic-related activities, and no part of either is used for commercial purposes. Unquestionably, the Masonic organization devotes a substantial amount of time and money for charitable purposes. At issue here, however, is whether the use of the properties meets the tests established by Georgia law to qualify them for a property tax exemption. "The test is whether the property itself is 'dedicated to charity and used exclusively' as an institution of purely public charity, not whether the [appellant] is an organization of purely public charity." *Tharpe v. Central Ga. Council &c. of America*, 185 Ga. 810, 813 (196 SE 762) (1938). "If exempt, it is only because it is property used exclusively as an institution of purely public charity." *Mu Beta Chapter &c. Corp. v. Davison*, 192 Ga. 124, 126 (14 SE2d 744) (1941). "Property owned by a charitable institution is not exempt from taxation unless it is used for the purposes for which that institution was established. Mere

latent ownership of property by an institution of public charity will not entitle it to an exemption in the absence of the required application of the property to the charitable goals of the owner." *Thomas v. Northeast Ga. Council*, 241 Ga. 291, 293 (244 SE2d 842) (1978). That an organization is non-profit, non-commercial, that it serves a benevolent purpose, and that its charter declares it to be a charitable and benevolent institution, do not automatically qualify it for a tax exemption as a charitable institution. *Historic House Museum Corp. v. Camp*, 223 Ga. 510, 511 (156 SE2d 361) (1967). Further, the use of the property sought to be exempted must not only be purely charitable, but must also be devoted to a public charity. *Georgia Congress of Parents &c. v. Boynton*, 239 Ga. 472, 473 (238 SE2d 113) (1977).

Based upon the exemption tests above enunciated by the Georgia courts, we hold that the properties at issue do not qualify for an ad valorem tax exemption pursuant to OCGA § 48-5-41 (a) (4). The properties are used as meeting places, and are not used for the actual charitable purposes for which the Masons were established. Also, the properties are used only by members of the respective lodges and are therefore not open to the "public." We agree with the trial court that the case of *Massenburg v. Grand Lodge F & AM &c.*, 81 Ga. 212 (7 SE 636) (1888) is not controlling because the issue decided in that case was the taxability of productive property when the income was used for charitable purposes. Any implication in that case that Masonic lodges, used exclusively for Masonic fraternal activities, are tax exempt is not binding as the controlling usage tests were not applied to those factual circumstances. Appellants' first and fifth enumerations are without merit.

3. Appellants' second and third enumerations of error, asserting that the trial court erred in failing to require appellee to file responsive pleadings and in failing to place the burden of proof on appellee, are both without merit. An appeal to the superior court from a county tax assessment is not a complaint as contemplated by the Civil Practice Act. *Rogers v. DeKalb County Bd. of Tax Assessors*, 247 Ga. 726 (1) (279 SE2d 223) (1981). Therefore, an answer is not required in response to such appeal, and a default judgment will not lie for failure to answer. Id. The court did not err in failing to require a responsive pleading, and such failure did not deprive appellants of any of their constitutional rights. "The burden of proof in the superior court was on the taxpayers, as the parties who initiated the appeal to that court. [Cit.]" *Hawkins v. Grady County Bd. of Tax Assessors*, 180 Ga. App. 834 (3) (350 SE2d 790) (1986). The court was not authorized to shift that burden, and no error occurred.

4. Appellants finally assert that the court erred in not considering the act of the Georgia legislature that incorporated the Grand Lodge of Georgia in 1796, and in not considering a cited Alabama case. Al-

though the act referenced states that the principles of the Masons are "charity and universal benevolence," as stated in Division 2, the wording of a corporate charter is not determinative; the property usage tests must nevertheless be satisfied. *Boynton,* supra at 473. Further, it was not error for the trial court to fail to consider an Alabama case cited by appellants in the face of controlling Georgia authority.

*Judgment affirmed. Beasley, Daniel M. Coursey, Jr., Dawson Jackson, Robert G. Walther, and Thomas D. Wilcox, Jr., JJ., concur. Birdsong, Arnold Shulman, and William J. Smith, JJ., dissent. Carley, C. J., Deen, P. J., McMurray, P. J., Banke, P. J., Sognier and Pope, JJ., disqualified.*

BIRDSONG, Judge, dissenting.

I am compelled to dissent as to Division 2 of the majority opinion and accordingly, I would reverse the holding of the trial court as to the issue of whether it erred in its interpretation of the "purely public charity" doctrine.

In my view, the position taken by the majority is too broad and threatens to destroy the property tax exemption status of many charitable organizations in this state, including perhaps that of the Red Cross and Salvation Army who maintain and operate non-profit headquarters or administrative buildings necessary for the perpetuation of their charitable entities and the planning of their organizational goals, including the accomplishment and coordination therein of public relations and publicity activities and the preparation of diverse charitable campaign strategies not directly connected to the disbursement of existing charitable funds.

Currently, OCGA § 48-5-41 (a) (4) provides that among the property exempt from ad valorem property taxation is that of "[a]ll institutions of purely public charity." OCGA § 48-5-41 (a) (5) (A) and (B) provides: "All property of nonprofit hospitals used in connection with their operation when the hospitals have no stockholders, have no income or profit which is distributed to or for the benefit of any private person, and are subject to the laws of this state regulating nonprofit or charitable corporations . . . (B) Property exempted pursuant to this paragraph shall not include property of a nonprofit hospital held primarily for investment purposes or used for purposes unrelated to . . . (i) Providing of patient care . . . (ii) Providing and delivery of health care services; or . . . (iii) Training and education of physicians, nurses and other health care personnel."

The Masonic lodges in the instant case may be referred to as the brain of the creature. It is undisputed no income is derived from the lodges. The function of the lodge is for the meeting place of its members and for the decisions which the members make. All decisions regarding how the lodge supports its charities emanates from its head-

quarters; without the brains, its lodges, the creature is nothing. Surely this use qualifies the lodges for their exemption which they ask for and deserve. This Code section on its face applies to *all* institutions, both public and private, which are institutions of "purely public charity." In *Massenburg v. Grand Lodge*, 81 Ga. 212, 217 (7 SE 636), the Supreme Court did "concede the purely public character of the charity which the Grand Lodge of Georgia administers. . . ." It has never been held that masonic bodies do not support a wide variety of charitable institutions and activities ministering to the needs of the *whole of classes* for whose relief the charities are intended or adapted, including as commonly known to the public at large: children's hospitals, burn centers, eye foundations and orphanages. For a definition of "charity" as used in tax exemption statutes, see generally *Peachtree on Peachtree Inn v. Camp*, 120 Ga. App. 403, 409-410 (170 SE2d 709).

However, the majority in essence observes that in *Tharpe v. Central Ga. Council, B. S. A.*, 185 Ga. 810, 813 (196 SE 762), it was recently held that a test to determine whether property shall be exempt from taxation "is whether the property itself is 'dedicated to charity and used exclusively' as an institution of purely public charity." Moreover, in *Mu Beta Chapter &c. Corp. v. Davison*, 192 Ga 124, 126 (14 SE2d 744), the Supreme Court held that "[i]t is the use to which the property is put, rather than the declaration of purpose found in its owner's charter, that determines the question of exemption from taxation." Compare *Atlanta Masonic Temple Co. v. City of Atlanta*, 162 Ga. 244 (133 SE 864).

However, while mere latent ownership of property by an institution of public charity will not entitle it to tax exemption per se (*Thomas v. Northeast Ga. Council, B. S. A.*, 241 Ga. 291, 293 (244 SE2d 842)), neither should the mere ownership and operation by a charitable institution of an organizational headquarters deprive such property per se of its tax exemption, regardless of the nomenclature given to such administrative building and whether they be called headquarters, administrative wings, operations buildings, lodges, or meeting halls. In fact, the Supreme Court has held that "[i]n so far as such organizations are *administrators and disbursers* of purely public charity, their property permanently in use for that purpose is *exempt* from taxation." (Emphasis supplied.) *Richardson v. Executive Comm. &c. Convention*, 176 Ga. 705, 708 (169 SE 18).

In *Elder v. Henrietta Egleston Hosp.*, 205 Ga. 489 (53 SE2d 751), the City of Atlanta assessed that property of the corporation, including lands, *buildings,* and hospital equipment which the hospital used exclusively *for the purpose of operating and maintaining its institutions.* Id. at 490. The court noted that the precedent found in a number of earlier cases was no longer binding, in view of the new wording

adopted in the Constitution of 1945 concerning the tax exemption of property of purely public charity institutions. The 1945 constitutional provision provided, inter alia, that the General Assembly may exempt from taxation " 'all institutions of purely public charity; . . . provided the property so exempted be not used for the purpose of private or corporate *profit* and income, *distributable* to shareholders in corporations owning such property or to other owners of such property, *and* any *income* from such property is used exclusively for religious, educational and charitable purposes, or for either *one or more* of such purposes *and* for the purpose of maintaining and operating such institution." (Emphasis supplied.) Id. at 492. The Court stated that in 1946, the General Assembly had passed an act exempting from taxation *all of the property* enumerated in the above-stated clause *using the identical language there employed.* Id. at 492. Then the Court observed "[b]ut in the present case no contention is made, *nor could the same be successfully made,* that the General Assembly has *not exempted* from taxation *all of the property* which it had constitutional authority to exempt. . . ." (Emphasis supplied.) Id. at 492. Thereafter, the Court concluded "the property sought to be taxed has been exempted by statute," and in doing so first opined that "as shown by our statement of facts, all of its *income* from all sources is used exclusively for maintenance, operation, enlarging its charitable facilities, and for furtherance of its charitable purposes, with no part of the same *distributable* to any one having an interest therein." (Emphasis supplied.) Id. at 492-493. OCGA § 48-5-41 (c) today contains *virtually the same verbiage* as the above provisions cited in *Elder.* And in determining the *use* to which the *property* is placed using the test of *Tharpe* and *Mu Beta,* supra, due consideration must also be given to the statutory provisions of OCGA § 48-5-41 (c), and the holding of our Supreme Court in *Elder.* Viewing *Elder* and OCGA § 48-5-41 (c) in their entirety and in light of prior cases recognizing the need for charitable institutions to *maintain* and *operate* their organizations, it appears that a permissible use of tax exempt charitable property clearly would include such uses as for the purposes of *administering, maintaining* and *operating* their own charitable institutions, and that unless the property was used to generate an income or profit not exempted from taxation under OCGA § 48-5-41 (c), the *property* itself would remain tax exempt.

A Masonic "lodge" serves as the cornerstone of the organization. Within the "lodge" is conducted the business of the lodge, including the voting for dispensing of charitable funds, the coordination of current charitable activities, and the planning of future charitable fund raising events. Even in *Massenburg,* under the then existing more stringent state rules of charitable property exemption, the Supreme Court recognized "the temple or lodge-building of the charitable or-

der or society — [as being] the domicile, habitation, seat, and external symbol of the organization. . . ." *Massenburg*, supra at 216. Moreover, in Division 2 of its opinion in *Massenburg*, the court tacitly reaches the conclusion that the portion of the lodge property not being operated as a money making rental activity "could *rightfully* claim" tax exemption through application of the "rule of apportionment." (Emphasis supplied.) *Massenburg*, supra at 220 (2). In the case sub judice, the board of tax assessors does not assert in its brief that the "lodge" buildings were ever used or rented in the commercial sense or that any profit has ever been made or attempted through the use of this property. Compare OCGA § 48-5-41 (c). Today, under OCGA § 48-5-41 (c) and *Elder*, even the making of income or profit by the charitable institutions property would not per se destroy its tax exemption. Rather, the *use* to which such profit or income is put and the manner in which it ultimately is distributed would appear to be controlling under the plain language of OCGA § 48-5-41 (c).

Accordingly, I would reverse the trial court's judgment and remand the case for an application of the rule for tax exemption of the property of charitable institutions, above discussed, in a manner consistent with the legislative intent clearly reflected by OCGA § 48-5-41 (c) and the holding of the Supreme Court in *Elder*, supra.

I respectfully dissent. I am authorized to state that Judge Shulman and Judge Smith join in this dissent.

DECIDED NOVEMBER 27, 1990 —
REHEARING DENIED DECEMBER 20, 1990 —

*J. Walter Cowart, Gordon B. Smith*, for appellants.
*Brennan, Harris & Rominger, Richard J. Harris, M. Carol Branham*, for appellee.

