S91G0512. YORK RITE BODIES OF FREEMASONRY OF
SAVANNAH et al. v. BOARD OF EQUALIZATION OF
CHATHAM COUNTY et al.
(408 SE2d 699)

FLETCHER, Justice.

We granted a writ of certiorari to the Court of Appeals to consider whether the properties of two Masonic organizations located in Chatham County are entitled to exemption from ad valorem taxation under OCGA § 48-5-41 (a) (4) as institutions of "purely public charity." *York Rite Bodies of Freemasonry of Savannah v. Bd. of Equalization,* 198 Ga. App. 147 (401 SE2d 30) (1990). In Division 2 of the *York Rite* decision, supra, a majority of the Court of Appeals held that the properties were not entitled to such exemption because they:

are used as meeting places, and are not used for the actual charitable purposes for which the Masons were established. Also, the properties are used only by members of the respective lodges and are therefore not open to the "public." *York Rite,* 198 Ga. App. at 149.

For the reasons which follow, we reverse such holding.

1. Beginning with Georgia's Constitution of 1877, there has been constitutional authority for the General Assembly to enact legislation exempting from taxation, with certain restrictions, "all institutions of purely public charity"[1] and since 1882 there has been legislation providing for such an exemption.[2]

2. In determining whether property qualifies as an institution of "purely public charity" as set forth in OCGA § 48-5-41 (a) (4), three factors must be considered and must coexist. First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits.

(a) In determining whether the owner is an institution devoted entirely to charitable pursuits, it must be remembered that the mere facts that the owner is a non-profit institution, that its charter de-

---

[1] 1877 Ga. Const., Art. VII, Sec. II, Par. II; 1945 Ga. Const., Art. VII, Sec. I, Par. IV; 1976 Ga. Const., Art. VII, Sec. I, Par. IV; 1983 Ga. Const., Art. VII, Sec. II, Par. IV.
[2] Code of 1882, § 798; Civil Code of 1895, § 762; Civil Code of 1910, § 998; Code of 1933, § 92-201 and as amended in 1978, § 91A-1102; and OCGA § 48-5-41 (a) (4).

clares it to be a charitable institution, and that the institution serves a benevolent purpose do not necessarily lead to the conclusion that the institution is exempted from ad valorem taxation by OCGA § 48-5-41 (a) (4). *United Hospitals Service Assn. v. Fulton County*, 216 Ga. 30, 33 (114 SE2d 524) (1960). While all of those should be considered, no one of them will be conclusive. Instead, the facts of each case must be viewed as a whole and all of the circumstances surrounding the institution must be considered. *Mu Beta Chapter Chi Omega House Corp. v. Davison*, 192 Ga. 124, 128 (14 SE2d 744) (1941).

(b) As to the second factor, this court has often noted that "[t]here are infinite charities that deserve the plaudits of all mankind. . . ." *United Hospitals*, 216 Ga. at 32. However, "[n]o matter how high the ideals of an institution, nor how lofty its purposes, in order for it to qualify as a charitable institution for tax exemption under [OCGA § 48-5-41 (a) (4)], it must have the sole purpose and activity of dispensing *public* charity. (Emphasis supplied.) *Camp v. Fulton County Medical Society*, 219 Ga. 602, 605 (135 SE2d 277) (1964).

(c) Finally, the applicability of this tax exemption will turn upon a determination of how the property is being used by the institution. "Mere latent ownership of property by an institution of public charity will not entitle [the property] to an exemption. . . ." *Thomas v. Northeast Ga. Council, Inc., Boy Scouts of America*, 241 Ga. 291, 293 (244 SE2d 842) (1978). Nor will "[m]erely making real estate available to other public or charitable institutions for their use [be] sufficient to qualify for the tax exemption." *Johnson v. Wormsloe Foundation*, 228 Ga. 722, 727 (187 SE2d 682) (1972). Instead, the use of the property must be exclusively devoted to conduct that benefits the public by furthering the charitable pursuits of its owner.

3. (a) Because of the procedural posture of these actions in the trial court, an evidentiary hearing has not yet been held as to either appellant's claim of entitlement to OCGA § 48-5-41 (a) (4)'s ad valorem tax exemption. The case must be remanded to the trial court so that such an evidentiary hearing can be held. Both appellants will have the burden of proving entitlement to the tax exemption based upon the coexistence of the three factors set forth in Division 1.[3]

(b) If the coexistence of the first two factors can be established, appellants will still have to prove that the use of their respective properties is exclusively devoted to furthering each appellant's charitable pursuits. As to this third factor, we have previously recognized that using property as a headquarters for the administration and dis-

---

[3] We note that the requirements of OCGA § 48-5-41 (c) and (d) must also be complied with by any institution that qualifies under subsection (a) (4) as an institution of purely public charity in order to entitle that institution to exemption from ad valorem taxation.

pensation of purely public charity will, under appropriate circumstances, entitle that property to exemption from ad valorem property taxes. *Massenburg v. The Grand Lodge F. & A. M. of the State of Ga.*, 81 Ga. 212, 218 (7 SE 636) (1888).[4]

The fact that the properties involved in the present case are used as meeting places of the respective appellants does not automatically preclude their use from being exclusively devoted to charitable pursuits; nor does the fact that the properties are used primarily by members of the Masons necessarily preclude them from being institutions for the dispensation of purely public charity. If appellants can establish that the use of their respective properties is exclusively for the administration and dispensation of public charity, then they will have established the third factor.

*Judgment reversed as to Division 2. Clarke, C. J., Smith, P. J., Weltner, Hunt, JJ., Judge Frank M. Hull and Judge Michael B. Stoddard concur. Bell and Benham, JJ., disqualified.*

DECIDED SEPTEMBER 20, 1991.

*J. Walter Cowart, Gordon B. Smith,* for appellants.
*Emily Garrard,* for appellees.
*Duvall, McCumber & Doverspike, Thomas O. Duvall, Jr., Jerry D. McCumber, John David Doverspike,* amicus curiae.

---

[4] In the *Massenburg* decision, supra, this court did not decide the question of "whether masonic institutions . . . are institutions of purely or even of public charity. . . ." *Massenburg,* 81 Ga. at 216. Accordingly, the *Massenburg* decision *does not* stand for the proposition that all Masonic lodges are institutions devoted entirely to charitable pursuits, nor does it stand for the proposition that the charitable pursuits of all Masonic lodges or similar institutions are for the benefit of the public. Each individual lodge must establish the existence of all three of the factors set forth in this opinion, as well as compliance with subsections (c) and (d) of OCGA § 48-5-41, in order to qualify for the ad valorem tax exemption set forth in subsection (a) (4) of that Code section.