A93A0710. BOARD OF EQUALIZATION v. YORK RITE BODIES OF FREEMASONRY OF SAVANNAH et al.

(433 SE2d 299)

JOHNSON, Judge.

The issue in this case is whether the properties of two Masonic organizations are entitled to exemption from ad valorem taxation under OCGA § 48-5-41 (a) (4) as institutions of "purely public charity." In *York Rite Bodies of Freemasonry &c. v. Bd. of Equalization*, 198 Ga. App. 147, 149 (2) (401 SE2d 30) (1990), we held that the Masonic lodges in question are not entitled to such an exemption because they "are used as meeting places, and are not used for the actual charitable purposes for which the Masons were established. Also, the properties are used only by members of the respective lodges and are therefore not open to the 'public.'" The Supreme Court reversed that holding and remanded the case to the trial court for an evidentiary hearing to determine whether the lodges qualify for the exemption. *York Rite Bodies of Freemasonry &c. v. Bd. of Equalization*, 261 Ga. 558 (408 SE2d 699) (1991). The Supreme Court set forth a test to be used in making that determination. "In determining whether property qualifies as an institution of 'purely public charity' as set forth in OCGA § 48-5-41 (a) (4), three factors must be considered and must coexist. First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits." *York Rite*, 261 Ga. at 558 (2). On remand, the trial court applied the test enunciated by the Supreme Court and concluded that the properties are entitled to the exemption as institutions of purely public charity. The Board of Equalization appeals.

"[F]indings of trial courts in nonjury trials shall not be set aside unless clearly erroneous." (Citation and punctuation omitted.) *Scott v. Purser Truck Sales*, 198 Ga. App. 611, 612 (1) (402 SE2d 354) (1991). Here, the trial court found that the Masons are an institution devoted entirely to charitable pursuits, that the charitable pursuits are for the benefit of the public and that the use of the lodges is exclusively devoted to those charitable pursuits. These findings are not supported by any evidence and are therefore clearly erroneous. There is ample evidence in the record to support a finding that the Masons devote a *substantial* amount of time and money to charitable pursuits which benefit the public. There is, however, no evidence that the Masons are devoted *entirely* to such pursuits or that the lodges in question are devoted *exclusively* to those pursuits. On the contrary, the evidence in the record shows that the Masonic organization devotes numerous resources to non-charitable pursuits which benefit only its members.

The record before this court shows that membership in the Masonic organization is limited to males who are at least 21 years old and who believe in one God. It also shows that one of the primary purposes of the Masonic organization is the improvement of its individual members through lectures and other programs held at their lodges. An exhibit in the record states that, in 1990, 58 percent of the Masons' philanthropic dollars were used to benefit the general public. The implication of that statistic is that the remaining 42 percent of the Masons' monetary donations were used for exclusive Masonic purposes and, in fact, the exhibit shows that 42 percent of the money was used for "Masonic Homes, Hospitals, etc." One of the Masons testified at his deposition that the Masons in some states maintain retirement homes reserved exclusively for use by their members, although no such homes exist in Georgia. He further testified that the Masons run a children's home in Georgia and require that ten percent of the space in the home be reserved specifically for Masonic children. Another Mason testified at his deposition that the Masons of Georgia maintain a relief fund for the primary purpose of caring for "needy Masons, their wives, widows and orphans." He further testified, "The individual Lodges usually — they try to take care of their own. If they can't take care of their own, then they appeal to Grand Lodge for assistance."

None of this evidence contradicts the fact that the Masons serve a benevolent purpose and pursue many public charities. "However, no matter how high the ideals of an institution, nor how lofty its purposes, in order for it to qualify as a charitable institution for tax exemption under OCGA § 48-5-41 (a) (4), it must have the sole purpose and activity of dispensing *public* charity." (Citations and punctuation omitted; emphasis in original.) *York Rite*, 261 Ga. at 558-559 (2) (a) (b). Because many of the Masons' activities and resources are used exclusively for the personal benefit of their group, it cannot be said that the group has the *sole* purpose and activity of dispensing *public* charity.

Moreover, "the use of the property must be exclusively devoted to conduct that benefits the public by furthering the charitable pursuits of its owner." Id. at 559 (2) (c). There is no evidence in the record that the use of the lodges in this case are *exclusively* devoted to the Masons' charitable pursuits which do in fact benefit the public. Instead, the evidence shows that in addition to using the lodges for such charitable pursuits, the Masons also use the lodges to conduct business which furthers the pursuits that benefit only Masons. They hold programs at the lodges which are designed solely to improve the individual members. They also collect money at the meetings, some of which is used for the exclusive Masonic pursuits discussed above. The property is therefore not exclusively devoted to conduct that benefits

the public.

The evidence in the record shows that the Masons are not an institution devoted entirely to public charity and that the lodges in question are not used exclusively for public charity. Consequently, the trial court's judgment that the Masons met their burden of proving that their properties are entitled to exemption from ad valorem taxation under OCGA § 48-5-41 (a) (4) as institutions of purely public charity is clearly erroneous and must be reversed.

*Judgment reversed. Blackburn and Smith, JJ., concur.*

DECIDED JUNE 1, 1993 —
RECONSIDERATION DENIED JULY 8, 1993 — 

*Barrow, Sims, Morrow & Lee, R. Stephen Sims*, for appellant.
*Walter Cowart, Gordon B. Smith*, for appellees.