**FOURTH DIVISION**
**PHIPPS, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A1100. H. O. P. E. THROUGH DIVINE INTERVENTIONS, INC. v. FULTON COUNTY BOARD OF TAX ASSESSORS.

PHIPPS, Presiding Judge.

H.O.P.E. Through Divine Interventions, Inc. appeals the superior court's summary judgment against it and in favor of the Fulton County Board of Tax Assessors. Specifically, the superior court ruled that H.O.P.E.'s real property (hereinafter, "Property") did not qualify during certain years for an exemption from ad valorem property taxation under OCGA § 48-5-41 (a) (4), which pertains to "[a]ll institutions of purely public charity." We affirm.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."[1] "In our de novo review of the grant of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant."[2]

The material facts are uncontested. H.O.P.E. was incorporated solely to provide residential, recovery, employment, self-development and other supportive services to individuals and families with histories of substance abuse, unemployment, homelessness, or criminal behavior. It is a non-profit corporation organized exclusively for charitable purposes within the meaning of Section 501 (c) (3) of the Internal Revenue Code, and is registered in Georgia as a "charitable organization" pursuant to OCGA § 43-17-5.

In July 2007, H.O.P.E. purchased the Property located in Fulton County; upon the Property was situated a gutted 40-unit apartment building; H.O.P.E. intended to provide upon the Property permanent supportive housing to low-income individuals and families who were homeless or at high risk of becoming homeless and who also were contending with various other special needs. In 2007, 2008, and 2009, H.O.P.E.

---

[1] OCGA § 9-11-56 (c).

[2] *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010) (citation and punctuation omitted).

engaged in the finance, construction, and renovation phases of developing the Property, and the construction and renovation undertakings were completed in November 2009. Meanwhile, no individual or family had been housed on the Property by H.O.P.E., nor had any other charitable services of H.O.P.E. been provided to anyone on the Property. In December 2009, when the apartments and its community center opened, the Property became home to formerly homeless persons. H.O.P.E.'s application that the Property be declared tax exempt as an "institution[ ] of purely public charity" was granted for 2010.

This case concerns years 2008 and 2009. H.O.P.E.'s exemption applications for those years were denied by the Fulton County Board of Tax Assessors, and the Fulton County Board of Equalization likewise concluded that the Property did not qualify for tax exempt status for 2008 and 2009. Thereafter appearing before the superior court, H.O.P.E. and the Fulton County Board of Tax Assessors presented on cross-motions for summary judgment the question whether, based upon the construction and renovation work during tax years 2008 and 2009, the Property qualified for tax exempt status as an "institution[ ] of purely public charity" pursuant to OCGA § 48-5-41 (a) (4).

That Code provision states: "The following *property* shall be exempt from all ad valorem property taxes in this state: All *institutions* of purely public charity."[3] The Supreme Court of Georgia has held that "in order for an institution to be granted a property tax exemption pursuant to OCGA § 48-5-41 (a) (4), it must satisfy the [three factors set forth in *York Rite Bodies of Freemasonry of Savannah v. Board of Equalization of Chatham County*[4]] . . . ."[5] In *York Rite*, the Supreme Court of Georgia held:

> In determining whether property qualifies as an institution of purely public charity as set forth in OCGA § 48-5-41 (a) (4), three factors must be considered and must *coexist*. First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, *the use of the property must be exclusively devoted to those charitable pursuits*.[6]

---

[3] OCGA § 48-5-41 (a) (4) (emphasis supplied).

[4] 261 Ga. 558 (408 SE2d 699) (1991).

[5] *Nuci Phillips Mem. Foundation v. Athens-Clarke County Board of Tax Assessors*, 288 Ga. 380, 385 (2) (703 SE2d 648) (2010). *Nuci Phillips Mem. Foundation* held further that OCGA § 48-5-41 (c), (d) (1) and (2) also had to be satisfied. *Nuci Phillips Mem. Foundation*, supra at 381 (1) (explaining that *York Rite* summarized the requirements for an institution to qualify as a "purely public charity" for an ad valorem tax exemption under the exemption statutes from 1946 to the pre-2006 exemption statute, OCGA § 48-5-41).

[6] *York Rite*, supra at 558 (2) (emphasis supplied).

4

The parties agreed before the superior court that their dispute concerned only the third *York Rite* factor. Summary judgment was granted against H.O.P.E. and in favor of Fulton County, because the superior court held that H.O.P.E.'s "intended use and preparation for that use" during 2008 and 2009 were insufficient to satisfy that factor.

On appeal, H.O.P.E. contends that the superior court erred in concluding that the Property did not qualify for tax exempt status as an "institution[ ] of purely public charity"[7] for tax years 2008 and 2009, when the Property was undergoing construction and renovation. It points out that constructing and renovating the Property were necessary steps because, without their successful completion, "H.O.P.E. would not have been able to ultimately provide permanent supporting housing to formerly homeless men and women at the Property, nor provide the infrastructure and support they need to prepare them for independent and permanent housing." H.O.P.E. asserts further that there is no evidence that, during the financing, construction, and renovation phases, it used the Property for any non-charitable purpose. Additionally, H.O.P.E. cites evidence that, during the financing phase, it executed agreements with various organizations promising that the acquired funds

_____

[7] OCGA § 48-5-41 (a) (4).

5

would be used to provide housing and other supportive services to persons who would live upon the Property.

But given the language of the statutory provision at issue, the long line of judicial decisions interpreting that language, and general principles applicable when determining entitlement to a tax exemption, the superior court properly concluded that the cited tax exemption did not apply to the Property, as urged by H.O.P.E.

We begin by recognizing the following general principles. "Taxation is the rule; exemption from taxation is the exception."[8] "[C]laims for exemption from taxation should generally be construed in favor of the State and against the

___

[8] *Thomas v. Northeast Ga. Council, Inc., Boy Scouts of America*, 241 Ga. 291, 293 (244 SE2d 842) (1978) (citing former Code Ann. § 92-201); see *Tharpe v. Central Ga. Council of Boy Scouts of America*, 185 Ga. 810, 813 (1) (196 SE 762) (1938) (setting forth language of Code § 92-201: "the following described property shall be exempt from taxation, to wit: . . . all institutions of purely public charity."); see further *Leggett v. Macon Baptist Assoc.*, 232 Ga. 27, 28 (I) (205 SE2d 197) (1974).

6

taxpayers."[9] Therefore, "we strictly construe taxation statutes, and we will not find an exemption unless it is clear that the legislature intended such exemption."[10]

The pertinent Code provision, OCGA § 48-5-41 (a) (4), does not expressly exempt from taxation property at which charitable housing and supportive services are merely contemplated, property for which funding is being procured so as to finance the necessary charitable infrastructure, or property upon which construction and renovation is in progress for its initial charitable use.[11] But as stated above, there is extensive case law interpreting the statutory language, including *York Rite*.[12] In addition to enumerating the three factors, *York Rite* provided the following guidance as to the third factor (at issue here):

> [T]he applicability of this tax exemption will turn upon a determination of *how the property is being used* by the institution. Mere latent ownership of property by an institution of public charity will not entitle

---

[9] *Johnson v. Wormsloe Foundation*, 228 Ga. 722, 728 (2) (187 SE2d 682) (1972) (citation omitted); see *Fulton County Bd. of Tax Assessors v. Visiting Nurse Health System of Metropolitan Atlanta*, 243 Ga. App. 64, 65 (2) (532 SE2d 416) (2000).

[10] *Visiting Nurse Health System of Metropolitan Atlanta*, supra at 67 (3) (footnote omitted).

[11] See text accompanied by note 3, supra.

[12] Supra.

the property to an exemption. Nor will merely making real estate available to other public or charitable institutions for their use be sufficient to qualify for the tax exemption. Instead, the *use* of the property must be *exclusively devoted to conduct that benefits the public by furthering the charitable pursuits of its owner*.[13]

Although H.O.P.E. maintains that its construction and renovation work during 2008 and 2009 constituted such "use," we cannot agree, in light of more than 100 years of decisions by the Supreme Court of Georgia, including *York Rite*,[14] *Thomas v. Northeast Ga. Council, Inc., Boy Scouts of America*,[15] *Mu Beta Chapter Chi Omega House Corp. v. Davison*,[16] and *Trustees of the Academy of Richmond County v. Bohler*.[17]

---

[13] *York Rite*, supra at 559 (2) (c) (emphasis supplied).

[14] Supra.

[15] Supra.

[16] 192 Ga. 124, 126 (14 SE2d 744) (1941).

[17] 80 Ga. 159 (7 SEd 633) (1887), superceded on other grounds as stated in *Elder v. Henrietta Egleston Hosp. for Children*, 205 Ga. 489, 491-493 (53 SE2d 751) (1949) (concerning effects of income-producing activity upon the tax-exempt status of institutions of purely public charity), and *Cobb County Board of Tax Assessors v. Marietta Educ. Garden Center*, 239 Ga. App. 740, 745 (2) n. 2 (521 SE2d 892) (1999) (acknowledging that *Elder*, supra, determined that the use of property to produce income may not defeat entitlement to exemption from ad valorem property taxation).

The *York Rite* Court, elaborating further on the third factor, made clear that the dispensation of public charity must exist.[18] There, where the properties at issue were used as "meeting places" and for other purposes primarily by members of the organizations,[19] the Court instructed, "If the [organizations] can establish that the use of their respective properties is exclusively for the administration *and dispensation of public charity*, then they will have established the third factor."[20] H.O.P.E.'s quests for the tax exemptions, however, were not based upon any claim that, upon its Property, it was then *dispensing* charitable housing or other supportive services to the *public*;[21] its quests for the exemptions rested upon the construction and renovation efforts as necessary steps toward ultimately providing such charity.

---

[18] *York Rite*, supra at 559-560 (3) (b).

[19] Id.

[20] Id. (emphasis supplied).

[21] See *Nuci Phillips Mem. Foundation*, supra at 386 (2) (explaining that to qualify as "public," it is not necessary that the facility be open to the entire public; rather, it is sufficient that it be "open to the classes for whose relief it was intended"); *Cobb County Board of Tax Assessors*, supra at 745 (2) (denying tax exemption because the property provided substantial benefits, including free use of the property, only to dues-paying member clubs and their memberships).

Moreover, the superior court's conclusion that H.O.P.E.'s "intended use and preparation for that use" – as manifested by its construction and renovation work – were insufficient to constitute "use" heeds the seminal case of *Trustees of the Academy of Richmond County*.[22] There, a testator had devised to trustees and their successors certain real estate, the annual product of which was to be appropriated to the erection of a poor-house and for the support of its inmates forever.[23] No poor-house had been erected, but the trustees were accumulating a fund for that purpose and for the purchase of a suitable site therefor, from the income of the devised property.[24] The devised property was taxed, and the trustees sought to enjoin the collection of taxes, claiming that the property was exempt as an institution of purely public charity.[25] The Supreme Court of Georgia concluded that the devised property was not exempt, and that the poor-house, "[w]hen it shall come into being and into

[22] Supra.

[23] Id. at 159-160.

[24] Id. at 160.

[25] Id.

10

use, pursuant to the scheme of the founder, it will be exempt from taxation" as an institution of purely public charity.[26]

The Court observed that the statutory language at issue – "[a]ll institutions of purely public charity"[27] – did not "mention[ ] property *of*, or *belonging to*, institutions of purely public charity, but only the institutions themselves."[28] Reasoning that "[t]hese institutions are thus mentioned as property,"[29] the Court held, "[U]ntil property gets into the form of the [statutorily] enumerated items or articles, no exemption obtains."[30] The Court elaborated, "When the tax officer goes forth to search for taxable property, all which he finds employed in the ordinary uses of

---

[26] Id. at 165.

[27] Id. at 160.

[28] Id. at 161 (emphasis supplied). Likewise, neither does the statutory language at issue in the instant case; see the text in this opinion that is accompanied by n. 3, supra. Cf. *Board of Tax Assessors of Ware County v. Baptist Village*, 269 Ga. App. 848, 851 (1) (605 SE2d 436) (2004) (determining that the General Assembly's passage of OCGA § 48-5-41 (a) (12), which pertains to "[p]roperty of a nonprofit home for the aged used in connection with its operation," was an expansion of the older category of institutions of purely public charity).

[29] *Trustees of the Academy of Richmond County*, supra at 161.

[30] Id. at 164.

common life, unless it belongs to the public, he is to regard as taxable."[31] When

exemption is claimed, the Court continued,

> [the tax officer] is not to look for persons, natural or artificial, nor for ideal beings, but for real, visible things. . . , and unless they are in present tangible existence, he cannot exempt something else which he is informed will be used to produce them hereafter. In other words, he is not to spare a form of property not enumerated because, for the time being, it represents a part or the whole of one or more of the forms which are enumerated. The exemption is not a release *in personam*, but a release *in rem*, and the *res* to which the release applies must be found and identified by the officer, or no exemption can be recognized.[32]

Employing language subsequently incorporated in cases such as *York Rite*, as well as

in the 2007 amendment to OCGA § 48-5-41,[33] the Court proclaimed that institutions

are exempt, "provided they are dedicated to charity and *used exclusively as*

---

[31] Id.

[32] Id. at 164-165 (emphasis in original).

[33] In 2007, the General Assembly amended OCGA § 48-5-41 (d) (2), including the requirement that, "[w]ith respect to paragraph (4) of subsection (a) of this Code section," the "building is used by such charitable institution exclusively for the charitable purposes of such charitable institution." Ga. L. 2007, p. 341, § 1. See *Nuci Phillips Mem. Foundation*, supra at 387 (2) (noting that OCGA § 48-5-41 (d) (2), as amended in 2007, encompasses, inter alia, the third prong of *York Rite*).

*institutions of purely public charity*."[34] The Court instructed, "[H]omes of various kinds, soup-houses, etc., permanently established and open, without charge, to the whole public, or to the whole of the classes for whose relief they are intended or adapted, are institutions of the exempt order."[35]

Accordingly, almost a century later, in *Thomas v. Northeast Ga. Council*,[36] the Supreme Court of Georgia expounded:

> [T]he test for determining whether property is exempt from taxation under [OCGA § 48-5-41 (a) (4)] . . . is "whether the property itself is dedicated to charity and used exclusively as an institution of purely public charity."[37] This usage test is succinctly stated in *Mu Beta Chapter Chi Omega House Corp. v. Davison*,[38] as follows: "If exempt, it is only because it is property used exclusively as an institution of purely public charity." Property owned by a charitable institution is not

---

[34] *Trustees of the Academy of Richmond County*, supra at 161 (emphasis supplied).

[35] Id.

[36] Supra.

[37] *Tharpe*, supra at 813 (punctuation omitted), citing *Trustees of the Academy of Richmond County*, supra.

[38] Supra.

13

exempt from taxation unless it is used for the purposes *for which that institution was established*.[39]

H.O.P.E. was established to provide residential, recovery, employment, self-development and other supportive services to certain individuals and families. There is no evidence that H.O.P.E. provided upon its Property any such housing or services during the construction and renovation phases of 2008 and 2009. Rather, it is undisputed that, while the construction and renovation were underway, the Property was not yet established and open to the classes for whose relief H.O.P.E. intended. Given the foregoing, the superior court properly rejected H.O.P.E.'s position that its ongoing construction and renovation upon the Property qualified the Property as an "institution[ ] of purely public charity."

H.O.P.E. cites evidence that, in procuring grants and other financial contributions, it executed agreements promising that the funds obtained would be used for the purposes of providing housing and other supportive services to persons who would live upon the Property. While those agreements may have shown

---

[39] *Thomas*, supra at 292-293 (citations and punctuation omitted).

H.O.P.E.'s dedication to its charitable pursuits,[40] the agreements do not supply the requisite "use." Moreover, it has long been settled that parties may not contractually defeat a government's right to collect taxes.[41]

Nothing in the cases of *City of Atlanta v. Crest Lawn Mem. Park Corp.*,[42] *Suttles v. Hill Crest Cemetery*,[43] or *City of Atlanta v. Clayton County Board of Tax Assessors*,[44] cited by H.O.P.E., provides for an outcome in its favor. Tax exemptions were allowed in those cases, but under other subsections of OCGA § 48-5-41. *Crest Lawn Mem. Park Corp.* and *Suttles* concerned the statutory tax exemption for "places

---

[40] See *Johnson*, supra at 726 (2) ("Whether express or implied, an intention on the part of the owner to dedicate his property to the public use must be shown.") (citation and punctuation omitted).

[41] See *Real Estate Loan Co. v. Union City*, 177 Ga. 55 (1) (169 SE 301) (1933) ("Aside from such exemptions from taxation as may be provided by law, parties can not by any sort of contract defeat the right of the government to collect the taxes for which property would otherwise be liable.") (citations omitted).

[42] 218 Ga. 497 (128 SE2d 722) (1962).

[43] 87 Ga. App. 343 (73 SE2d 760) (1952).

[44] 284 Ga. App. 871 (645 SE2d 42) (2007), disapproved on other grounds as stated in *Gilmer County Board of Tax Assessors v. Spence*, 309 Ga. App. 482, 483 (711 SE2d 51) (2011).

of burial."[45] And *Clayton County Board of Tax Assessors* concerned the statutory tax exemption for "public real property which is owned by a political subdivision of this state and which is situated outside the territorial limits of the political subdivision."[46]

Finally, H.O.P.E. makes a policy argument that disallowing a tax exemption under the circumstances presented by this case would "discourage" development. But as "the Supreme Court [has] noted, '[t]here are infinite charities that deserve the plaudits of all mankind, but the [law] restricts tax exemption of institutions of charity. . . .'"[47] Whether and the extent to which an exemption applies are matters of policy

---

[45] See OCGA § 48-5-41 (a) (2) (exempting from ad valorem property taxes "All places of burial"); *Crest Lawn Mem. Park Corp.*, supra at 499-502 (3); *Suttles*, supra at 346-348 (explaining that, regarding the tax exemption for places of burial, "[t]he inquiry is: Has the property been committed to use as a cemetery and is it being held in good faith for that purpose?").

[46] See OCGA § 48-5-41 (a) (1) (B); *Clayton County Board of Tax Assessors*, supra at 871-872.

[47] *Visiting Nurse Health System of Metropolitan Atlanta*, supra at 65-66 (2), quoting *Ga. Osteopathic Hosp. v. Alford*, 217 Ga. 663, 667 (124 SE2d 402) (1962) (further noting that without qualifying legal parameters, "courts would ramble in a wilderness of private charitable actions in seeking an answer to their eligibility to tax exemption" and therefore cautioning that "great admiration for all charitable acts must not cause [courts] to overlook the [law]").

16

judgment reserved for the legislature.[48] Here, nothing in the plain language of the statutory exemption expressly encompasses property merely intended for charitable use or property merely being prepared for its initial charitable use.[49] And the interpretation of the statutory language proposed by H.O.P.E. exceeds the boundaries drawn by judicial decisions that constrain this court.[50] Indeed, when previously considering the exemption provided by OCGA § 48-5-41 (a) (4), this court described

---

[48] *Perdue v. Baker*, 277 Ga. 1, 14 (6) (586 SE2d 606) (2003) ("The core legislative function is the establishment of public policy through the enactment of laws.") (footnote omitted); *Commonwealth Investment Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) (holding that "the legislature, and not the courts, is empowered by the Constitution to decide public policy, and to implement that policy by enacting laws; and the courts are bound to follow such laws if constitutional"); see *Ga. Osteopathic Hosp.*, supra; *Visiting Nurse Health System of Metropolitan Atlanta*, supra.

[49] OCGA § 48-5-41 (a) (4). See generally OCGA § 48-5-41 (d) (1), which provides that, except under circumstances not at issue here, "this Code section . . . shall not apply to real estate or buildings which are not used for the *operation* of . . . charitable institutions." (Emphasis supplied.) Also see generally *Nuci Phillips Mem. Foundation*, supra at 385 (1) (ascertaining that OCGA § 48-5-41 (d) (1) counters attempts for a "greatly expanded tax exemption" that "would be vulnerable to abuse by commercial developers wishing to evade property tax").

[50] See *York Rite*, supra; *Thomas*, supra; *Mu Beta Chapter Chi Omega House Corp.*, supra; *Trustees of the Academy of Richmond County*, supra. Cf. *Nuci Phillips Mem. Foundation*, supra at 383 (1) (determining that the General Assembly's 2007 amendment to OCGA § 48-5-41 (d) (2) was intended to broaden the ability of charitable institutions to use their property to raise income, where specified parameters were met); *Baptist Village*, supra.

17

"it [as] a *narrow* exception."[51] Given the statutory language, binding precedents interpreting that language, and governing principles applicable when discerning entitlement to tax exemptions, this court (as was the superior court) is without authority to effectively expand upon the reaches of OCGA § 48-5-41 (a) (4), as urged by H.O.P.E.

As the Supreme Court of Georgia has recently reiterated in *Nuci Phillips Mem. Foundation v. Athens-Clarke County Board of Tax Assessors*:[52] "an exemption is still unavailable in those situations where a public charity owns property, but does not use the property in its charitable purposes."[53] Given the facts and circumstances of this case,[54] the superior court correctly concluded that H.O.P.E.'s cited "use" of the Property during 2008 and 2009 did not bring the Property within the ambit of OCGA § 48-5-41 (a) (4), which pertains to "[a]ll institutions of purely public charity."

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[51] *Visiting Nurse Health System of Metropolitan Atlanta*, supra at 65 (2).

[52] Supra.

[53] Id. at 385 (1) (citation omitted).

[54] Id. (emphasizing that, in determining applicability of a statutory tax exemption, the facts of each case must be viewed as a whole and all of the circumstances surrounding the institution must be considered).