**SECOND DIVISION
ANDREWS, P. J.,
MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0356. FULTON COUNTY BOARD OF TAX ASSESSORS v.
PIEDMONT PARK CONSERVANCY.

BRANCH, Judge.

Appellant Fulton County Board of Tax Assessors ("the Board") denied appellee Piedmont Park Conservancy ("the Conservancy") a charitable tax exemption as to a building in the Atlanta park owned by the Conservancy but occupied in part by lessees operating two restaurants. The Conservancy appealed to the Fulton County Board of Equalization, which also denied the exemption, and then to the superior court, which granted the Conservancy a tax exemption as to those portions of the building not occupied by the restaurants. On this appeal, the Board asserts that the superior court erred when it granted the Conservancy the proportional tax exemption

because such exemptions are not authorized by law and because the Conservancy has failed to prove that it is entitled to such an exemption. We find no error and affirm.

The relevant facts are not in dispute. The Conservancy, which is recognized by the Internal Revenue Service and the Georgia Secretary of State as a Section 501 (c) (3) charitable corporation, purchased the property at issue, which includes one building, from the American Legion in 1999. In March of that year, the Conservancy applied for a tax exemption for the property on the basis of the Conservancy's status as a "purely public charity"[1] and represented to the Board that a portion of the building would be provided to the City of Atlanta police as a precinct "without charge." The Conservancy also stated that fees arising from activities held at the property, such as evening courses, "would only cover expenses associated with programs" and "[would] not constitute a 'lease' or 'rent.'" On the basis of these representations, the Board granted the Conservancy a full tax exemption as to the building in 1999. The police did not use any portion of the building as a precinct, however, and soon vacated the space given to them.

In 2001, after learning that visitors to the Park sought food services there, the Conservancy leased 18.57% of the building to Willy's Mexicana Grill for ten years

---

[1] See OCGA § 48-5-41 (a) (4).

2

in exchange for more than $50,000 annual rent and a profit-sharing arrangement under which the Conservancy would receive 6% of gross sales in excess of $1,000,000. In 2002, the Conservancy leased an additional 9.73% of the building to a second restaurant for ten years in exchange for more than $28,000 annual rent and 6% of gross sales in excess of $850,000. All of the income received by the Conservancy from the restaurants during the years at issue has been devoted to the Conservancy's charitable purposes, which include the preservation and enhancement of the park and the provision of recreational and educational services to the public; no part of the Conservancy's earnings is distributed to private persons or shareholders. The portion of the building not leased to the restaurants, amounting to 71.7% of its square footage and known as the Piedmont Park Community Center, consists of office space for the Conservancy, an environmental education center, and a room used for Conservancy events and community meetings. The Conservancy also uses the Center for events including summer camp programs and an open-air community market.

In 2005, and in response to an inquiry from the Board, the Conservancy represented that it continued to use the property for charitable purposes. In January 2013, after an appraiser observed the restaurants in operation at the property, the

3

Board notified the Conservancy that its entire tax exemption as to the property was denied for the tax years 2010, 2011, and 2012, and requested that the Conservancy complete an exemption application concerning its use of the property for the tax years 2010 and 2011. The Conservancy did not complete the application; instead, it appealed to the Board of Equalization, which also denied the exemption. The Conservancy then appealed to the superior court, which granted an exemption as to the 71.7% of the building not leased to the restaurants.

On appeal from this ruling, the Board argues that Georgia law does not authorize a tax exemption for any portion of a property owned by a charitable organization engaged in commercial activities on that same property. The Board also argues that the Conservancy did not present evidence as to the charitable use of the remainder of the property. We disagree with these contentions.

OCGA § 48-5-41 (a) (4) provides an exemption for "all ad valorem property taxes" to "[a]ll institutions of purely public charity." Under the Georgia Constitution of 1945 and a 1946 amendment to it, charitable institutions were authorized to use a portion of their property to generate income as long as the property's "primary purpose" remained charitable. See Ga. Const. of 1945, Art. VII, Sec. I, Par. IV; Ga. L. 1946, p. 13, § 1 (a), now codified as OCGA § 48-5-41 (d) (1); *Nuci Phillips Mem.*

*Foundation v. Athens-Clarke County Bd. of Tax Assessors*, 288 Ga. 380, 389-390 (2)

(703 SE2d 648) (2010) (Nahmias, J., concurring specially). As subsections (c) and

(d) (1) of the same statute explain:

> (c) The property exempted by this Code section . . . *shall not be used for the purpose of producing private or corporate profit and income distributable to shareholders* in corporations owning such property or to other owners of such property, and *any income from such property shall be used exclusively for religious, educational, and charitable purposes* or for either one or more of such purposes and for the purpose of maintaining and operating such religious, educational, and charitable institutions.
>
> (d) (1) *Except as otherwise provided in paragraph (2) of this subsection* [quoted below], this Code section . . . *shall not apply to real estate or buildings which are rented, leased, or otherwise used for the primary purpose of securing an income thereon and shall not apply to real estate or buildings which are not used for the operation of religious, educational, and charitable institutions.* Donations of property to be exempted shall not be predicated upon an agreement, contract, or other instrument that the donor or donors shall receive or retain any part of the net or gross income of the property.

(Emphasis supplied.) OCGA § 48-5-41 (c), (d). And the Supreme Court of Georgia

has long granted tax exemptions to charities even when the commercial activity at

those charities' properties have generated income, as long as that income is used

5

exclusively for religious, educational, or charitable purposes." In *Elder v. Henrietta Egleston Hosp. for Children*, 205 Ga. 489 (53 SE2d 751) (1949), for example, our Supreme Court upheld an ad valorem exemption for a hospital that charged patients for varying proportions of their medical care, but used all of the income generated for charitable purposes, on the ground that such charges did not destroy the hospital's status as a "purely public charity," with "the fact that patients who are able to pay are charged for services rendered" not altering "its character as such." Id. at 490-491 (citing the 1947 predecessor of OCGA § 48-5-41). Likewise, in *Church of God of the Union Assembly v. City of Dalton*, 216 Ga. 659 (119 SE2d 11) (1961), the Court upheld an ad valorem exemption for a church building containing a restaurant used primarily to feed members of the church, visiting church personnel, and persons in need, but which was also open to paying customers. Because the evidence "demanded a verdict so exempting" the building, including the restaurant, the Court ordered that a verdict be modified so as to grant the building an exemption. Id. at 660, 662 (citing the 1947 and 1953 predecessors to OCGA § 48-5-41).

In *Peachtree on Peachtree Inn v. Camp*, 120 Ga. App. 403 (170 SE2d 709) (1969), this Court held that although a small portion of a building owned by the Georgia Baptist Convention and used by two retail stores "would not be tax exempt"

6

because "[t]he area where the stores are located is being used to gain rental [income] and not for the primary purpose of operating the [home]," that portion of the same building actually used as a home for the aged was tax-exempt, even though its residents paid rent. Id. at 411. Thus, and although prior precedent had recognized that income-producing operations could occur on a property without destroying the charitable status of any part of that property, see *Elder*, 205 Ga. at 490-491; *Church of God of the Union Assembly*, 216 Ga. at 660-662, *Peachtree on Peachtree* ratified a charitable tax exemption as to those portions of a property not used to produce income. 120 Ga. App. at 411 (citing predecessor statute to OCGA § 48-5-41 as well as *Church of God*, supra).

In 1991, the Supreme Court of Georgia reaffirmed that OCGA § 48-5-41 authorized ad valorem tax exemptions for property owned by a "purely public charity" under a three-part test: "First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits." *York Rite Bodies of Freemasonry of Savannah v. Bd. of Equalization of Chatham County*, 261 Ga. 558 (2) (408 SE2d 699) (1991). In the wake of *York Rite*, this Court continued to hold that proportional exemptions

7

as to those portions of a property not engaged in income-producing activities were consistent with OCGA § 48-5-41's provision of exemptions to "purely public charities." See, e.g., *Lamad Ministries v. Dougherty Cty. Bd. of Tax Assessors*, 268 Ga. App. 798, 804-806 (4) (602 SE2d 845) (2004) (reversing trial court's denial of exemption as to home for the aged when the court's aggregation of property "deprived that portion of the property used primarily as a place of worship from tax exemption"; tax assessors were "fully capable of separating the tax exempt property from nonexempt property" and assessing each accordingly) (footnote omitted).

In *Nuci Phillips*, decided in 2010, a plurality of the Supreme Court of Georgia summarized the history of OCGA § 48-5-41 through 2006 as follows:

> Under the exemption statutes from 1946 to 2006, those institutions that qualified as purely public charities were allowed to use their property to produce income *as long as the primary purpose of the property was not to secure income, the income-producing activity was consistent with its charitable activities, and the income was used exclusively for the institution's charitable purposes*. As long as these three income rules were satisfied, then a charitable organization that raised income would be considered as using its property "exclusively" for its charitable purposes and thus remain a purely public charity.

8

(Citation omitted; emphasis supplied.) 288 Ga. at 381-382 (1). As the *Nuci Phillips* plurality also noted, subsection (d) (2) was added to OCGA § 48-5-41 in 2006, providing that

> real estate or buildings which are owned by a charitable institution that is exempt from taxation under Section 501(c) (3) of the federal Internal Revenue Code and used by such charitable institution for the charitable purposes of such charitable institution may be used for the purpose of securing income so long as such income is used exclusively for the operation of that charitable institution.

Ga. L. 2006, pp. 376, 377, § 1. Only one year later, however, the legislature replaced this version of subsection (d) (2) with one providing that

> *a building which is owned by a charitable institution that is otherwise qualified as a purely public charity* and that is exempt from taxation under Section 501(c)(3) of the federal Internal Revenue Code *and which building is used by such charitable institution exclusively for the charitable purposes* of such charitable institution, and not more than 15 acres of land on which such building is located, *may be used for the purpose of securing income so long as such income is used exclusively for the operation of that charitable institution*.

Ga. L. 2007, p. 341, § 1 (emphasis supplied); *Nuci Phillips*, 288 Ga. at 382 (1).

9

The *Nuci Phillips* special concurrence noted that "[t]he only substantial change made by the 2007 amendment was to limit – to the building owned by the charity and not more than 15 acres on which the building sits – the extent of property that may be used *primarily* to generate income." 288 Ga. at 394 (4) (Nahmias, J., concurring) (emphasis supplied). "The reason for this limitation is not apparent from the statute, but its effect is to prevent a charity from receiving the tax exemption if it owns a large amount of income-producing land." Id. Notwithstanding these observations, an outright majority of the *Nuci Phillips* Court agreed that with the 2006 and 2007 amendments to the statute, "the General Assembly intended to *broaden* the ability of charitable institutions to use their property to raise income." 288 Ga. at 383 (1) (plurality); see also id. at 392 (3) (Nahmias, J., concurring) (the 2006 amendment to OCGA § 48-5-41 (d) "*expanded* the existing tax exemption" by deleting the "'primary' purpose qualifier present in the old subsection (d)") (emphasis supplied).

In the face of this legislative and interpretative history, the Board argues that the plain language of subsections (c) and (d) (2) of the statute forbids the Conservancy from using any portion of the property at issue for income-producing activity while maintaining tax-exempt status. This argument runs contrary to at least forty years of Georgia law.

10

We remain bound by our Supreme Court's decision in *York Rite* as applied by the plurality in *Nuci Phillips*, to the effect that "three factors must be considered and must coexist" in order for a court to conclude that "property qualifies as an institution of 'purely public charity'" under OCGA § 48-5-41 (a) (4): "First, the owner must be an institution devoted entirely to charitable pursuits; second, the charitable pursuits of the owner must be for the benefit of the public; and third, the use of the property must be exclusively devoted to those charitable pursuits." *York Rite*, 261 Ga. at 558 (2). As the *York Rite* Court also noted, "the requirements of OCGA § 48-5-41 (c) and (d) must also be complied with by any institution that qualifies under subsection (a) (4) as an institution of purely public charity in order to entitle that institution to exemption from ad valorem taxation." Id. at 559 n. 3 (3) (a). Specifically, an institution seeking an ad valorem tax exemption as to a property must show that "any income from such property shall be used exclusively for religious, educational, and charitable purposes," OCGA § 48-5-41 (c); that the property is not "rented, leased, or otherwise used for the primary purpose of securing an income thereon," id. at (d) (1); and that any income earned by that property "is used exclusively for the operation of that charitable institution." Id. at (d) (2).

11

Here, the Conservancy remains "devoted entirely" to its mission of furthering recreational and educational activities in the Park, and these activities continue to be undertaken "for the benefit of the public," such that the first two requirements of *York Rite* are satisfied. See *York Rite*, 261 Ga. at 558 (2), citing OCGA § 48-5-41 (a) (4). Further, the Conservancy's use of income generated at the property is "used exclusively for the operation" of the Conservancy such that *York Rite*'s third requirement is satisfied. *York Rite*, 261 Ga. at 558 (2). Specifically, any income earned by the Conservancy is used in furtherance of its "religious, educational, and charitable purposes," OCGA § 48-5-41 (c); 71.7% of the building at issue remains "exclusively devoted to" the Conservancy's charitable purposes, such that the property's "primary purpose" remains charitable, id. at (d) (1); and such income earned by the Conservancy is used "exclusively for the operation of" the Conservancy. Id. at (d) (2); see also *York Rite*, 261 Ga. at 558 (2). In the language of the *Nuci Phillips* plurality, the tax-exempt status of the Conservancy building at issue is not abrogated simply because a part of that property is used to produce income because the property has never been used "'for the *primary purpose* of securing an income thereon.'" Id. at 385 (emphasis supplied), quoting OCGA § 48-5-41 (d) (1). Rather, and because the statute "permits the securing of income by non-charitable

12

activities if used exclusively for the operation of the charitable institution," *Nuci Phillips*, 280 Ga. at 387 (2), the Conservancy is entitled to a proportional tax exemption concerning the building at issue. Id.; see also id. at 398 (7) (Nahmias, J., concurring) (foundation's property was "exclusively devoted to those charitable pursuits" when income from the property was "used exclusively for the operation of the charitable institution") (citations and punctuation omitted). Compare *First Congregational Church v. Fulton County Bd. of Tax Assessors*, 320 Ga. App. 868, 878 (2) (c) (740 SE2d 798) (2013) (physical precedent only) (church was not entitled to exemption as to its parking lot used to produce income approximately 85% of the time); *H.O.P.E. Through Divine Interventions v. Fulton County Bd. of Tax Assessors*, 318 Ga. App. 592, 598-599 (734 SE2d 288) (2012) (charity that did not use any of the subject property for its stated charitable purposes during the two-year period at issue was not entitled to an exemption for that period).

The Board also argues that the Conservancy is not entitled to a proportional exemption under the circumstances of this case because it failed to provide evidence of the charitable use of that portion of the building not occupied by the restaurants and because the restaurants are turning a profit, generating "more income than what is paid for rent." The first of these contentions is belied by the record, which includes

13

an unrefuted affidavit stating that the Community Center occupies 71.7% of the building at issue and that the Center is used for purposes consistent with the Conservancy's charitable mission. And the profitability of the tenant restaurants has no bearing on the question whether the Conservancy is entitled to a proportional exemption as to the space *not* occupied by these tenants.

Citing the *Nuci Phillips* special concurrence,[2] the Conservancy argues that it is entitled to a charitable exemption as to 100% of the building at issue. We have no jurisdiction over this question, however, because the Conservancy did not cross-appeal the trial court's imposition of ad valorem tax on the 28.3% of the building dedicated to income-producing activities. See OCGA § 5-6-38 (a) (a civil appellee

---

[2] The *Nuci Phillips* special concurrence suggested that income-generating activities having the "sole purpose of raising funds to be used for [an] organization's charitable services" should not bar that organization from an exemption "even if the property were used for the primary purpose of securing such income." 288 Ga. at 398 (Nahmias, J., concurring specially). By contrast, the plurality continued to consider whether the "primary purpose" of the property was "not to raise income but to provide services for those seeking mental health assistance." 288 Ga. at 386 (2). We also note that the General Assembly has not accepted our Supreme Court's invitation in *Nuci Phillips* to amend OCGA § 48-5-41 (d) (2). See 280 Ga. at 398-399 (8) (plurality's imposition of "primary" purpose restriction on "non-charitable" and "charitable" income-producing activities "will be our effective precedent, governing the outcome of future cases raising this issue"); Ga. L. 2014, Act 613, § 1, eff. Jan. 1, 2015 (amending only subsection (a) (1) (F) as to private property "primarily used for student housing or parking" by the Board of Regents of the University System of Georgia).

14

may institute a cross appeal "by filing notice thereof within 15 days from service of the notice of appeal by the appellant," thus presenting "for adjudication on the cross appeal all errors or rulings adversely affecting him"); *Reliance Ins. Co. v. Cobb County*, 235 Ga. App. 685, 686 (510 SE2d 129) (1998) (dismissing appellee's direct appeal in light of availability of both interlocutory and cross-appeal procedures).

For all these reasons, the trial court did not err when it construed OCGA § 48-5-41 as authorizing a proportional tax exemption for that portion of the building at issue not devoted to producing income for the Conservancy.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*